IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DONALD JONES,

        Petitioner,                  No. CIV S-03-1421 MCE GGH P

    vs.

D.L. RUNNELS, Warden, et al.,

        Respondents.            FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Petitioner, a state prisoner proceeding with appointed counsel, has filed this application pursuant to 28 U.S.C. § 2254. Petitioner was sentenced, in 2000, to a term of fifty years to life to be served consecutively to a sentence of ten years, having been convicted, in 1999, on count 1, murder in the first degree, and count 3, assault with a firearm and personal use of a firearm and great bodily injury allegations found true. Memorandum of Points and Authorities in Support of Petition (hereafter, Petition), p. 11,[1] citing CT 283, RT 377-78; Answer, p. 7, citing CT 164-66, 171-72, RT 373. Petitioner proceeds on one ground: "the trial court violated his right to counsel and due process when it denied counsel's request to schedule the trial one year

_____

[1] The court's electronic pagination is referenced.

1

from the date of the crime, and instead removed the entire public defender's office from the case and replaced it with a 'conflicts panel' attorney."  Petition, p. 2.[2]

II.  AEDPA

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  Harrington v. Richter, 131 S.Ct. 770, 785 (2011).  Rather, "when a federal claim has been presented to a state court and the state court has denied

---

[2] This habeas matter, in which petitioner proceeded with appointed counsel, was stayed, pending exhaustion of petitioner's ineffective assistance of counsel claim, for more than five years without the filing of an amended petition, notwithstanding that in the April 26, 2004, Order, staying this case, petitioner had been "directed to file an amended petition containing all of petitioner's claims immediately upon exhaustion of state court remedies."  An order issued, on September 21, 2009, directing petitioner's counsel to show cause why the stay in this matter should not be lifted.  Evidently, the ineffective assistance of counsel claim was never exhausted in state court. The stay was ultimately lifted on November 19, 2009, and briefing on this matter was ordered.  Petitioner filed a supporting Memorandum of Points and Authorities on January 4, 2010; respondent filed an Answer on May 26, 2010 (following a 60-day extension of time).  Finally, following two extensions of time (for 45 and then 14 more days), a Traverse was filed on August 26, 2010.

relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S.Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, supra, 131 S.Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004). Accordingly, "a habeas court must determine what arguments or theories supported or . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are

presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338, 126 S.Ct. 969, 974 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 131 S.Ct. at 786-787. "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early, supra, 537 U.S. at 8, 123 S.Ct.

4

at 365.  Where the state courts have not addressed the constitutional issue in dispute in any

reasoned opinion, the federal court will independently review the record in adjudication of that

issue.  "Independent review of the record is not de novo review of the constitutional issue, but

rather, the only method by which we can determine whether a silent state court decision is

objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

III.  Background

               Petitioner states that on January 26, 1999, a complaint was filed charging

               petitioner

with the murder of Catherine Owens and the attempted murder of Duane Cummins on January

20,[3] 1999, further alleging that petitioner had personally discharged a firearm in committing the

crimes.  Petition, p. 3, citing CT 12-13.  Petitioner was arraigned on January 26, 1999, and the

public defender's office appointed to represent him.  Id., citing CT 1.  Thereafter, on or about

February 1, 1999, Assistant Public Defender Tommy Clinkenbeard was assigned to represent

petitioner.  Id., citing CT 19.   Mr. Clinkenbeard represented petitioner at the preliminary hearing

on May 21, 1999.  Id., CT 21, 91-92.

               At this point, the unpublished state court opinion accurately sets forth the

background of petitioner's claim:[4]

---

[3] Actually, petitioner states that the offenses were alleged to have occurred on January 21, 1999, but the record cited identifies the date as January 20, 1999.

[4] The state court of appeals also sets forth the underlying facts of the commitment offense as follows (which facts were adopted in petitioner's Petition for Review to the California Supreme Court–see respondent's Lodged Document 2, Petition for Review, p. 3): "About 11 p.m. on January 20, 1999, Duane Cummins, homeless and addicted to drugs and alcohol, arrived at his makeshift shelter with a tarp located behind a liquor store. Catherine Owens, Cummins's girlfriend, met Cummins at the shelter and the two sat down to eat. At 11:15 p.m., Cummins heard someone kicking on the wood gate which led to the shelter. When the gate gave way, Owens asked, "Who is there?" Defendant threw back the tarp and the light from a streetlamp illuminated Owens while Cummins remained in the dark.  Defendant pointed a gun at Owens and demanded, "Give me everything you've  got." As Cummins began to explain that they had nothing, defendant fired the gun a total of five times from two-to-six feet away from Owens. Owens was shot twice in the chest and died. Cummins was shot in the right hand which he raised when defendant began shooting. Defendant fled the scene. Cummins called 911 from a nearby

5

On May 21, 1999, at the conclusion of the preliminary hearing, the court inquired whether defendant requested counsel. He did and indicated he was indigent. The following discourse ensued:

"THE COURT: The public defender is appointed to represent Mr. Jones.

"MR. CLINKENBEARD: Accept the appointment and waive any further reading that Mr. Jones-

"THE COURT: Do you waive any further arraignment on the Information?

"MR. CLINKENBEARD: Yes, we do.

"THE COURT: Does Mr. Jones desire to plead not guilty and to deny the special allegations?

"MR. CLINKENBEARD: Yes, we do.

"THE COURT: Do you plead not guilty to each of the crimes charged against you, Mr. Jones?

"DEFENDANT: Yes, sir.

"THE COURT: And do you deny the two special allegations?

"DEFENDANT: Yes, sir.

"THE COURT: Pleas of not guilty are entered, and denials with the special allegations are entered.

"The 55th day will be July 15th. I would like to set the case on or before July 15th. What date do you request, Mr. Clinkenbeard?

"MR. CLINKENBEARD: Judge, I spoke with the D.A. about this;

telephone.

Defendant was interviewed and denied knowing anything about the shooting.  He also denied having or owning a gun. Defendant changed his story and admitted going to Cummins's shelter to steal. Defendant was surprised to find anyone there and when Cummins reached for something, defendant fired.  Afterwards, defendant reloaded his gun with five bullets he had in his pocket.  Defendant hid the gun in the bushes near his apartment where the officers found it. Bullets from the gun killed Owens.

Dr. Susan Garcia-Swain testified for the defense. She practiced addiction and holistic medicine. She interviewed defendant who claimed he had consumed eight beers and a half liter of liquor on the date of the offenses.  He also claimed that he had been a chronic drinker from the age of 12 years. Based on her interview, Dr. Garcia Swain concluded defendant had a blood-alcohol level of .2 at the time of the offenses."  <u>People v. Jones</u>, 2002 WL 399478 *1 (Cal. App. 3rd Dst. 2002).

I'm not going to be able to set a trial date in this case until sometime next spring. I am booked for the rest of this year with mostly co-D homicide trials. I am going to ask for a trial date sometime in March or April-

"THE COURT: You know what you should do then: I really think we ought to put a matter over for a couple of days, and I really think that, especially in this case, you ought to comply with Section 1050 and file a written declaration.  Doesn't matter if there's a stipulation; it's mandatory.  You ought to take a look at Section 987.[0] 5 of the Penal Code.

"MR. FRAWLEY: Your Honor, I'm not stipulating to anything.  I do wish the trial to be set within a reasonable amount of time, and I think March of next year is unreasonable and that we ought to investigate the possibility that another lawyer should be assigned to this case.

"THE COURT: I think that you ought to take a look at Section 1050 and Section 987[.]05. You ought to sign a declaration and let a judge make a decision based on a proper declaration.

*3 "MR. CLINKENBEARD: Okay."

The matter was continued until May 25, 1999.  At the hearing on May 25, 1999, an amended information was filed adding the special circumstance which alleged that defendant murdered Owens during an attempted robbery.  Also on May 25, 1999, Clinkenbeard filed a declaration stating that investigation was not complete and that he had conflicts in his trial schedule which precluded his ability to proceed to trial within the statutory time period.  He asked for a trial date in the "spring of 2000."  In pertinent part, Clinkenbeard stated: "This case was assigned to me on or about February 1, 1999.  Two other homicides were assigned to me within a month of this case.  I was in a two month trial when these cases were assigned.  I have a two defendant homicide starting in June.  I have a three defendant homicide starting in August.  I have another homicide set in November. Also, this week, I'll be setting a trial date on a four defendant homicide case that is already one year old."  The matter was continued to June 8, 1999. Arraignment on the amended information and further proceedings on the declaration concerning a trial date were deferred until then.

On June 7, 1999, Clinkenbeard filed a motion to dismiss the special circumstance allegation, added by the amended information, on the grounds of insufficient cause and lack of jurisdiction by the superior court.  On June 8, 1999, the trial court chose to hear argument on the motion to dismiss prior to deciding the counsel and trial date issues, and continued the matter to June 18, 1999.

On June 10, 1999, the prosecutor filed a brief asserting the prosecution's right to a speedy trial.  He relied upon section 987.05, which allows the appointment of counsel who represents that he or she is ready to proceed with trial in a reasonable time.  The prosecutor argued that the court had discretion to remove counsel who cannot try the case at the scheduled trial date, and asserted that a fall 1999 trial date provided ample time for preparation counsel.  He noted Cummins's availability was a concern due to his homelessness and addiction to narcotics.  The prosecutor also filed an opposition to the motion to dismiss the special circumstance allegation.

At the June 18, 1999, hearing, the court denied Clinkenbeard's motion to dismiss the special circumstance allegation.  Clinkenbeard claimed he had no idea the appointment issue would be litigated on that date and obtained a continuance until June 25, 1999.

On June 23, 1999, Clinkenbeard filed a response to the prosecution's assertion of speedy trial rights and other arguments, claiming a number of points.  The case was not straightforward and simple but rather complex because the prosecutor was proceeding on a felony murder theory, a different theory than advanced at the preliminary hearing.  A trial date one year from the date of defendant's arrest was the custom and practice in the county for the type of case.  The prosecutor acted in bad faith based on the added special circumstance and on discussions prior to the preliminary hearing.  The defendant's right to counsel outweighed any state right to a speedy trial and that counsel's removal without substantial justification would violate defendant's right to counsel.  The prosecutor selectively cited section 987.05 but failed to show the defense requested trial date "in February or March" was unreasonable or disruptive.  The public defender also claimed the prosecutor's concerns about Cummins's availability were illegitimate, that the court should refuse to follow Williams v. Superior Court (1996) 46 Cal.App.4th 320, 53 Cal.Rptr.2d 832, that section 987.05 was inapplicable because counsel had made no guarantee that he would be ready to proceed, and that section 987.05 is unconstitutional because it denied equal protection.

*4 At the hearing on June 25, 1999, Clinkenbeard added that it was the desire of defendant and his family that Clinkenbeard remain on the case.  Clinkenbeard asserted that the prosecution had to show misconduct on Clinkenbeard's part to remove him as counsel.  The prosecutor replied that Clinkenbeard's appointment was contingent upon a showing that he would be ready to proceed at a trial date set. The prosecutor represented that his office could try the case in two weeks, "It is that simple."  Clinkenbeard disputed that the magistrate set the matter for evaluation under section 987.05.

At an in camera hearing the same day, Clinkenbeard informed the

8

court of his planned investigation and theories including: his plan to have the victim's blood retested; his plan to consult with a drug expert concerning the victim's blood alcohol content, as well as his client's; his plan to consult with an "interrogation" expert to review defendant's statement to determine whether it was voluntary; his plan to consult with a ballistics expert to examine the gun and random pattern of gunfire; his plan to consult with a crime scene expert to assist in demonstrating that defendant had no intent to commit a robbery; his plan to consult with a blood splatter expert to refute intent and support a self-defense theory; his plan to research a Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694] issue as well as the lack of fingerprints on the gun; his plan to obtain a booking photograph of defendant and better quality autopsy photographs; his plan to reinterview witnesses who were with defendant the night of the shootings and who gave inconsistent statements concerning defendant's whereabouts; his plan to locate a third party, related to defendant or his girlfriend, and a person known to Cummins who allegedly admitted to the shootings; and his plan to reinterview Cummins who did not seem to be straightforward about his or Owens's condition the night of the shootings or the identity of the shooter.

After argument, the court said that Clinkenbeard's appointment as counsel for defendant was dependant [sic] upon his availability for trial.  He concluded that Clinkenbeard had not shown he was available within a reasonable period of time, within the meaning of section 987.05, due to his trial schedule which included a current trial at the time of assignment to this case, a two-defendant trial in June, a three-defendant trial in August, a trial in November and a four-defendant trial to be scheduled which was over a year old. The court stated its opinion that the nature of the case was not complex despite counsel's claim he was surprised by the felony-murder theory.  The court also noted the prosecution's speedy trial rights and concerns about its key witness's availability. Based on Clinkenbeard's representation that no one else in the public defender's office was available to take the case, the office was relieved and a panel attorney was appointed.  Subsequently, trial was scheduled for October 12, 1999, but eventually the case was tried in November 1999.

People v. Jones, 2002 WL 399478 *2-*4 (Cal. App. 3rd Dst. 2002).

\\\\

\\\\

\\\\

\\\\

\\\\

IV.  Was denial of petitioner's counsel's request to schedule the trial one year from the date of the crime and replacement of public defender's office with a 'conflicts panel' attorney a denial by trial court of petitioner's right to counsel and to due process?

In afffirming the conviction, the state court of appeals set forth the following:

*Standard of Review*

*5 The trial court is required to assign counsel to defend an indigent defendant who appears for arraignment without counsel and who desires the assistance of counsel. (§ 987, subd. (a).)

The trial court has a duty to appoint an attorney in compliance with section 987.05, "who represents, on the record, that he or she will be ready to proceed with the preliminary hearing or trial, as the case may be, within the time provisions prescribed in this code for preliminary hearings and trials, except in those unusual cases where the court finds that, due to the nature of the case, counsel cannot reasonably be expected to be ready within the prescribed period if he or she were to begin preparing the case forthwith and continue to make diligent and constant efforts to be ready.  In the case where the time of preparation for preliminary hearing or trial is deemed greater than the statutory time, the court shall set a reasonable time period for preparation.  In making this determination, the court shall not consider counsel's convenience, counsel's calendar conflicts, or counsel's other business.  The court may allow counsel a reasonable time to become familiar with the case in order to determine whether he or she can be ready.  In cases where counsel, after making representations that he or she is ready for preliminary examination or trial, and without good cause is not ready on the date set, the court may relieve counsel from the case and may impose sanctions upon counsel, including, but not limited to, finding the assigned counsel in contempt of court, imposing a fine, or denying any public funds as compensation for counsel's services.  Both the prosecuting attorney and defense counsel shall have a right to present evidence and argument as to a reasonable length of time for preparation and on any reasons why counsel could not be prepared in the set time."

Section 1049.5 provides: "In felony cases, the court shall set a date for trial which is within 60 days of the defendant's arraignment in the superior court unless, upon a showing of good cause as prescribed in Section 1050, the court lengthens the time.  If the court, after a hearing as prescribed in Section 1050, finds that there is good cause to set the date for trial beyond the 60 days, it shall state on the record the facts proved that justify its finding. A statement of facts proved shall be entered in the minutes."

"Neither the convenience of the parties nor a stipulation of the parties is in and of itself good cause." (§ 1050, subd. (e).) "When deciding whether or not good cause for a continuance has been

shown, the court shall consider the general convenience and prior commitments of all witnesses, including peace officers.  Both the general convenience and prior commitments of each witness also shall be considered in selecting a continuance date if the motion is granted.  The facts as to inconvenience or prior commitments may be offered by the witness or by a party to the case." (§ 1050, subd. (g).)

*6 The trial court's assignment of counsel for an indigent defendant pursuant to section 987 is reviewed for abuse of discretion. *(Harris v. Superior Court* (1977) 19 Cal.3d 786, 795-796, 140 Cal.Rptr. 318, 567 P.2d 750; *Drumgo v. Superior Court* (1973) 8 Cal.3d 930, 934-935, 106 Cal.Rptr. 631, 506 P.2d 1007; see also *People v. Daniels* (1991) 52 Cal.3d 815, 846-847, 277 Cal.Rptr. 122, 802 P.2d 906.) No abuse of discretion is shown by the mere fact the trial court failed to appoint defendant's choice of counsel who is willing to accept appointment. (*Harris, supra*, at pp. 795-796, 140 Cal.Rptr. 318, 567 P.2d 750.)

*Analysis*

Defendant contends the trial court abused its discretion in refusing to schedule trial in February or March 2000, as requested by Clinkenbeard and erred in removing and replacing Clinkenbeard with a conflicts panel attorney. FN4 We disagree with defendant's interpretation of the record.

> FN4. Although acknowledging that he is not entitled to counsel of his choice, he argues that "his right to counsel is not satisfied by mere physical presence of an attorney who did not participate on his behalf." He claims this is "what [defendant] wound up with" as a result of the trial court's errors. Defendant's dissatisfaction with trial counsel's performance, however, has not been translated into a contention on appeal of ineffective assistance of counsel. He clarifies in his reply brief that trial counsel did "an admirable job by persuading the jury not to find the special-circumstance" to be true. He simply points to the differences between what Clinkenbeard intended to pursue and what actually was presented at trial in an attempt to demonstrate prejudice from the trial court's errors.

The facts reflect that counsel's appointment was contingent upon his showing that a trial date far beyond the statutory requirement was reasonable. At the conclusion of the preliminary hearing, the magistrate appointed "the public defender" to represent defendant and proceeded to set a trial date within the 60-day statutory requirement for trial. Clinkenbeard represented that he would be unavailable that soon due to conflicts in his schedule and requested

a date far beyond the statutory requirement. The prosecutor objected, stating that the date requested by defense counsel was not reasonable and that another attorney should be assigned. The magistrate sent the case back to home court for Clinkenbeard to demonstrate that the date he requested was reasonable, specifically referring to both sections 987.05 and 1050.

Based on this record, reasonably interpreted, the appointment was subject to an evaluation of Clinkenbeard's request for a trial date far beyond the statutory requirement. As the trial court determined, the "appointment was impliedly continued on a representation that was consistent with [section] 987.05."

Under the circumstances, the court had the authority to reconsider its appointment. "Removal" of counsel is not the issue. We thus consider whether the trial court abused its discretion in finding a reasonable period for preparation was far exceeded by Clinkenbeard's request for a trial date.

Sections 987.05 and 1049.5 require the trial court to appoint only an attorney who represents on the record that he will be ready for trial within 60 days "except in those unusual cases" where more time is required for preparation. In such case, the court is required to set a reasonable time period for preparation which excludes from consideration "counsel's convenience, counsel's calendar conflicts, or counsel's other business." (§ 987.05.)

Initially, at the conclusion of the preliminary hearing, Clinkenbeard relied upon his scheduling conflicts in requesting a trial date beyond the statutory period stating that he was "booked for the rest of this year with mostly co-[defendant] homicide trials ." He subsequently filed a declaration stating that investigation on the case was not complete and fully explained his scheduling conflicts. He requested a trial date in the spring of 2000.

*7 The prosecution opposed the date, arguing that a fall 1999 trial date should be ample time for preparation and asserted its speedy trial rights. The prosecution also stated its concern for its key witness, Cummins, based on his homelessness and addiction to narcotics.

In response, Clinkenbeard added numerous reasons in order to justify a lengthy period of time for preparation including defendant's desire that he remain on the case, the complexity of the case, the custom and practice of the county to go to trial one year from the date of arrest, the prosecutor's bad faith for adding a special circumstance, defendant's right to counsel, the prosecutor's selective use of section 987.05 which in any event was unconstitutional, and disputed the prosecutor's concerns about Cummins's availability. With respect to further investigation, Clinkenbeard listed numerous areas including consultation with

various experts, researching a suppression issue, retesting of the victim's blood, obtaining better quality photographs, reinterviewing witnesses, and locating a possible third party who was responsible for the shootings.

All of the foregoing information was considered by the trial court in making its determination that Clinkenbeard's request for a spring 2000 trial date was not a reasonable request for time for preparation of the case.  The court specifically cited Clinkenbeard's numerous scheduling conflicts, including a few multiple defendant trials, which suggested that Clinkenbeard would be in trial continuously and precluded time for preparation of the type he planned to do in the present case. The court disagreed that the case was complex and stated that the addition of the special circumstance allegation should have come as no surprise.  The court noted that although defendant was willing to waive his right to a speedy trial, the prosecution was not primarily on the basis of its concern for its key witness, a homeless person.  The entire public defender's office was relieved based on Clinkenbeard's representation that no one else in the office could prepare the case any sooner.

Defendant simply argues that the court abused its discretion in denying Clinkenbeard's continuance request based on the numerous areas of investigation outlined for the court which constituted good cause under section 1050. The court specifically found that due to counsel's scheduling conflicts, he could not complete investigation in the current matter in a timely manner for purposes of section 987 .05 and section 1049.5.

Section 987.05 specifically provides that counsel's scheduling conflicts were not to be considered in determining a reasonable time period for preparation.  Defendant has failed to demonstrate that the trial court abused its discretion in concluding that the public defender was unavailable for appointment under section 987.05.

People v. Jones, 2002 WL 399478 *4-*7.

Defendant frames the issue as the denial of a continuance of trial and removal of appointed counsel. The Attorney General claims the issue concerns the appointment of counsel in the first instance.

The issue arose in the following way. Tommy Clinkenbeard, assistant public defender, appeared on defendant's behalf in proceedings subsequent to the preliminary hearing. The magistrate had appointed Clinkenbeard pending an independent review of his availability for trial. The court made the appointment contingent upon a showing that his request for a trial date far beyond the statutory time requirement was reasonable. The trial court concluded the trial date requested by Clinkenbeard was

unreasonable and deemed him unavailable for trial and therefore
refused to appoint him.

We shall conclude the trial court did not abuse its discretion in

refusing to appoint Clinkenbeard who requested an unreasonable
trial date.

People v. Jones, 2002 WL 399478 at *2.[5]

### Applicable Standard of Review - AEDPA

Petitioner first argues that § 2254(d) does not circumscribe this claim and that

this court should review the claim de novo because the state courts did not adjudicate the merits

of his federal constitutional claim, citing Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002).

Petition, p. 12.  The court has set forth above the AEDPA standard of review under § 2254(d), as

---

[5] The undersigned observes that the federal Speedy Trial Act "generally requires a
trial to begin within 70 days of the filing of an information or indictment or the defendant's
initial appearance, 18 U.S.C. § 3161(c), but the Act recognizes that criminal cases vary widely
and that there are valid reasons for greater delay in particular cases."  Zedner v. United States,
547 U.S. 489, 497, 126 S. Ct. 1976 (2006).  Among the factors for the judge to consider in
determining whether a continuance should be granted are:

"i) Whether the failure to grant such a continuance in the
proceeding would be likely to make a continuation of such
proceeding impossible, or result in a miscarriage of justice.
(ii) Whether the case is so unusual or so complex, due to the
number of defendants, the nature of the prosecution, or the
existence of novel questions of fact or law, that it is unreasonable
to expect adequate preparation for pretrial proceedings or for the
trial itself within the time limits established by this section.
(iii) Whether, in a case in which arrest precedes indictment, delay
in the filing of the indictment is caused because the arrest occurs at
a time such that it is unreasonable to expect return and filing of the
indictment within the period specified in section 3161(b), or
because the facts upon which the grand jury must base its
determination are unusual or complex.
(iv) Whether the failure to grant such a continuance in a case
which, taken as a whole, is not so unusual or so complex as to fall
within clause (ii), would deny the defendant reasonable time to
obtain counsel, would unreasonably deny the defendant or the
Government continuity of counsel, or would deny counsel for the
defendant or the attorney for the Government the reasonable time
necessary for effective preparation, taking into account the exercise
of due diligence."

18 U.S.C. § 3161(h)(7)(B)(i - iv).

1   well as the circumstance calling for an independent, but not de novo, review of the record.  In

2   Pirtle, the Ninth Circuit also identified the situation wherein de novo review is applicable; that is,

3   where the state court decision does not reach the merits of the claim presented.  313 F.3d at 1167.

4   In such a case, "concerns about comity and federalism that arise when a state court reaches the

5   merits of a petition for post-conviction relief do not exist."  Id.  Petitioner, citing a plethora of

6   mostly out-of-circuit authority, contends that this is just such a circumstance.  Petition, pp. 12-17,

7   n. 9.  One of the reasons for de novo review, which petitioner argues is applicable in the context

8   of this claim, occurs when the state court decision addresses a claim only in terms of state law.

9   Petition, p. 13, citing Lyell v. Renico, 470 F.3d 1177 (6th Cir. 2006).  Petitioner contends that his

10   case is similar to that of Lyell and Norde v. Keane, 294 F.3d 401 (2d Cir. 2002).  Petition, p. 17.

11   In Norde, the Second Circuit panel found that the more deferential AEDPA standard did not

12   apply to Norde's Sixth Amendment claims because the state court of appeal had not indicated "in

13   any way that it had considered" the claims; thus, they were found not to have been adjudicated on

14   the merits.   Petition, pp. 15-17; Norde v. Keane, 294 F.3d at 410.

15         However, as noted above, the United States Supreme Court has determined that

16   citation to controlling Supreme Court authority or even awareness of such authority is not

17   required in a state court decision "so long as neither the reasoning nor the result of the state-court

18   decision contradicts them."  Early v. Packer, 537 U.S. at 8, 123 S. Ct. at 365.

19         Respondent argues that the state court of appeals' analysis, in addition to

20   considering the prosecution's main witness' potential unavailability as a homeless person, also

21   weighed factors such as the needs of the investigation set forth by defense counsel; defense

22   counsel's ability to complete the preparation claimed to be needed for trial; reasonableness of the

23   time demands in light of the complexity of the case, as well as the trial court's analysis.  Answer,

24   pp. 18-19.  Respondent contends these are the same considerations that would be undertaken in

25   the context of a constitutional analysis.  Id., p. 19.

26   \\\\

1       The Supreme Court has emphasized ... that the right to counsel of
choice is "circumscribed in several important respects." *Wheat v.*
2       *United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140
(1988).  Indeed, there are four specific situations in which the Sixth
3       Amendment does not entitle a defendant to preferred counsel: A
defendant does not have the right to be represented by (1) an
4       attorney he cannot afford; (2) an attorney who is not willing to
represent the defendant; (3) an attorney with a conflict of interest;
5       or (4) an advocate (other than himself) who is not a member of the
bar. *Id.* In addition, the Court has established that a trial court
6       requires "wide latitude in balancing the right to counsel of choice
against the needs of fairness, and against the demands of its
7       calendar." *Gonzalez-Lopez*, 126 S.Ct. at 2565-66 (citation
omitted). As such, trial courts retain the discretion to "make
8       scheduling and other decisions that effectively exclude a
defendant's first choice of counsel." *Id.* at 2566.

9

10  Miller v. Blacketter, 525 F.3d 890, 895 (9th Cir. 2008).

11       Petitioner counters in response that even if those same factors would have been

12 considered had the state appellate court actually addressed the federal claims, AEDPA deference

13 would not be appropriate because while the question was fairly presented to the state court it was

14 based on state law not taking into account federal due process concerns.  Traverse, p. 3, citing

15 Matthews v. Ishee, 486 F.3d 883 (6th Cir. 2007) (in that case, the Sixth Circuit found that de novo

16 review was applicable because the state appellate court had denied a Sixth Amendment Brady

17 claim on the basis of a state court decision).   Petitioner seeks to distinguish authority that

18 respondent relied on for the principle that the state court's adjudication is entitled to AEDPA

19 deference.  Traverse, pp. 2-4; Answer, p. 19.  In Albrecht v. Horn, 485 F.3d 103, 116 (3d Cir.

20 2007), the Third Circuit found that AEDPA deference and not de novo review applied in the

21 context of a claim wherein the merits of the prejudice prong of an ineffective assistance of post-

22 conviction counsel had been addressed by the state supreme court.  Petitioner argues that this

23 case is off-point because in Albrecht, the state's highest court did identify and purport to apply

24 "the correct governing legal principle." Traverse, p. 3, citing id.  In Cox v. Burger, 398 F.3d

25 1025 (8th Cir. 2005), petitioner notes in another case where AEDPA deference was applied that it

26 was a case wherein at the time the applicable standard for the confrontation clause issue raised

1  was precisely the same as that of the state rule of evidence.  This court notes that the Eighth

2  Circuit made the point that petitioner therein had not shown how the state court analysis "did not

3  comport with established federal Confrontation Clause law."  Cox v. Burger, 398 F.3d at 1030.

4  Petitioner also maintains that the issue he raises is not that he is entitled to his choice of counsel

5  but rather that his Sixth and Fourteenth Amendment rights were violated by an unreasoning,

6  arbitrary insistence on an expeditious trial date in the face of a justifiable request for a delay.

7       Petitioner also seeks to distinguish the Ninth Circuit's ruling in Gonzalez v.

8  Knowles, 515 F.3d 1006, 1012 (9th Cir. 2008), also cited by respondent, wherein it was found

9  that petitioner's federal habeas appointment of counsel claim not to be cognizable "unless the

10  state court's discretionary appointment ran afoul of settled constitutional principles."  Answer,

11  pp. 19-20; Traverse, pp. 5-6.  The Gonzalez Court determined that the appointment of a facially

12  competent attorney for Gonzalez satisfied the Sixth Amendment's requirements although the

13  counsel appointed was not his first choice.  Id.  Nor did Gonzalez's argument that he was denied

14  due process argument succeed as there was no showing of an irreconcilable conflict with

15  appointed counsel and due process would have been met by the court's inquiry into the request.

16  Id., at 1013.  Petitioner in the instant case seeks to distinguish Gonzalez on the basis that there

17  was no dispute in that re-sentencing matter about its straightforwardness or as to the prevailing

18  county practice with regard to appointing a private defender to avoid any ineffective assistance

19  issue.  Traverse, p. 6.

20       Petitioner has not shown entitlement to de novo review.  There is no dispute that

21  petitioner presented the precise claim before this court (which would otherwise render the claim

22  unexhausted) to the state Supreme Court, an alleged violation of petitioner's Sixth and

23  Fourteenth Amendment rights to counsel and due process by the trial court's refusal of a public

24  defender's request to continue the trial date and by replacing the entire public defender's office

25  with a "conflicts panel" attorney.  Respondent's Lodged Document 2, Petition for Review, p. 2.

26  While the petition for review received a postcard denial (Lodged Doc. 3), it can be presumed that

17

the state's highest court adjudicated the claim on the merits.  Harrington v. Richter, 131 S. Ct. at 784-85 ("[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary)."  The Supreme Court stated plainly that § 2254(d) does not require that the state court set forth a statement of reasons for its decision.  Id., 131 S. Ct. at 784.  The High Court did observe that the presumption that the state court adjudicated the claim on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely," citing Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590 (1991).  Id., 131 S. Ct. at 785.  In Ylst, the Supreme Court applied the following presumption: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Ylst v. Nunnemaker, 501 U.S. at  803, 111 S. Ct. 2590.  Assuming that the state appellate decision rested only on state grounds, and that these state grounds do not sufficiently correspond to the federal issue,[6] the undersigned does not believe that it was the intent of the Supreme Court in Harrington to permit evasion of the restrictions of § 2254(d) in the context of the less common instance, as the one here, where there was purely a state law analysis of a federal claim resulting in a denial in an intermediate state court and a later summary denial by a higher state court when that higher court has been presented with a purely federal claim. The present factual context indicates that all possible merits decision of the California Supreme Court, both state and federal, and that the federal court should not presume that the state supreme

---

[6] Although in at least one case cited by the state appellate court in its decision, e.g., Drumgo v. Superior Court ,8 Cal.3d 930, 934, 106 Cal.Rptr. 631 (Cal. 1973), the state Supreme Court expressed the opinion that the rule of § 987 "conforms with those of the federal courts." And in Harris v. Superior Court, 19 Cal.3d 786, 795-796  n. 8, 140 Cal. Rptr. 318 (1977), also relied on by the state Court of Appeals, the state Supreme Court found nothing in the Sixth and Fourteenth Amendments, citing Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525 (1975), which limited § 987's provision that a court must assign counsel to represent an indigent defendant in a criminal case who desires counsel (i.e., he is not entitled to be represented by a particular attorney of his choosing).

1  court simply ignored the federal issue in its merits decision.  This is not a situation where a claim

2  was decided in the appellate court on state procedural grounds, not on the merits, where a silent

3  denial in the higher court could probably be construed as based on the procedural determination.

4  Moreover, the higher court could well have viewed the state issue and the federal issue as similar

5  enough that a silent denial covered both bases.

6  Nevertheless, because the state Supreme Court's denial was a summary one, this

7  federal court in its application of AEDPA must independently review the record in adjudication

8  of petitioner's claim.  As noted, "[i]ndependent review of the record is not de novo review of the

9  constitutional issue, but rather, the only method by which we can determine whether a silent state

10  court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d at 853.

11  The question for this court, therefore, is whether an independent review of the

12  record demonstrates that the California Supreme Court's decision was "contrary to" established

13  principles of the United States Supreme Court.  After careful consideration, the undersigned

14  concludes that it does not.

15  Analysis

16  In pertinent part, the Sixth Amendment provides that "[i]n all criminal

17  prosecutions, the accused shall enjoy the right ...to have the Assistance of Counsel for his

18  defence."  U.S. Const. Amend. VI.  "While the right to select and be represented by one's

19  preferred attorney is comprehended by the Sixth Amendment, the essential aim of the

20  Amendment is to guarantee an effective advocate for each criminal defendant rather than to

21  ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  Wheat v.

22  United States, 486 U.S. 153, 159, 108 S. Ct. 1692 (1988)[citation omitted].  In "several

23  important respects" the Sixth Amendment right to choose one's counsel "is circumscribed,"

24  among which is that "a defendant may not insist on representation by an attorney he cannot

25  afford ...."  Id,

26  \\\\

The Supreme Court has also stated:

> Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. See *Chambers v. Maroney*, 399 U.S. 42, 53-54, 90 S.Ct. 1975, 1982-1983, 26 L.Ed.2d 419 (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel. Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

Morris v. Slappy, 461 U.S. 1, 11-12, 103 S. Ct. 1610, 1616 (1983)(state court denial of continuance for originally assigned public defender to become available not a Sixth Amendment violation).

> There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415; Torres v. United States, 270 F.2d 252 (C.A.9th Cir.); cf. United States v. Arlen, 252 F.2d 491 (C.A.2d Cir.).

Ungar v. Sarafite, 376 U.S. 575, 589-90, 84 S. Ct. 841, 849-50 (1964) (finding denial of continuance for newly retained counsel to familiarize himself with case not unconstitutional in light of all the circumstances, including that the motion was made on the day of the scheduled hearing, Ungar himself was a lawyer familiar with court's practice regarding not granting adjournments, evidence and witnesses were readily available; nor, when counsel was permitted to withdraw, did the Constitution require the trial court to grant Ungar's own motion for continuance). On the other hand, while "[t]he matter of continuance is traditionally within the discretion of the trial judge, and ... not every denial of a request for more time ... violates due process ...., a myopic insistence upon expeditiousness in the face of a justifiable request for delay

1   can render the right to defend with counsel an empty formality.  <u>Chandler v. Fretag</u>, 348 U.S. 3,

2   75 S.Ct. 1, 99 L.Ed. 4."  <u>Ungar</u>, at 589, 84 S. Ct. at 849-50.

3          For petitioner to show a violation of his Sixth Amendment rights based

4   on the trial court's denial of his motion to continue, petitioner must therefore demonstrate "that

5   the trial court abused its discretion through an 'unreasoning and arbitrary "insistence upon

6   expeditiousness in the face of a justifiable request for delay.'"" <u>Houston v. Schomig</u>, 533 F.3d

7   1076, 1079 (9th Cir. 2008).

8          Thus, the question is whether or not the state Supreme Court's denial was

9   "contrary to" the established Supreme Court authority that, while trial courts have broad

10   discretion in considering requests for continuance, this decision affirmed only an "unreasoning

11   and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'" such

12   that it constituted a violation of petitioner's Sixth Amendment right to the assistance of counsel.

13   The Ninth Circuit has said that absent "a showing of actual prejudice" to petitioner's defense as a

14   result of a "trial court's refusal to grant a continuance, it cannot be said that the district court

15   erred by denying relief on this ground."  <u>Gallego v. McDaniel</u>, 124 F.3d 1065, 1072 (9th Cir.

16   1997).

17          The factors applied by the Ninth Circuit on direct appeal to determine whether the

18   district court has abused its discretion in granting or denying a request to continue a hearing,

19   particularly "[w]hen defendant's Sixth Amendment right to counsel is implicated," include:

20          whether the continuance would inconvenience witnesses, the court,
            counsel, or the parties; whether other continuances have been
21          granted; whether legitimate reasons exist for the delay; whether the
            delay is the defendant's fault; and whether a denial would
22          prejudice the defendant.

23   <u>United States v. Studley</u>, 783 F.2d 934, 939 (9th Cir. 1986) (no abuse of discretion where

24   defendant on day of trial, three months after arrest, was denied continuance to, inter alia, obtain

25   counsel when the court found: the request not made in good faith, that Studley had been granted

26   \\\\

prior continuances, had known of need for counsel for several months,[7] the facts of the case were not complex and she would not obtain counsel even if continuance granted).  In the context of a habeas petitioner's claim of a violation of his Sixth Amendment right to self-representation by a state trial court's denial of his motion for a continuance in order to prepare his defense, a Ninth Circuit panel identified four factors for consideration drawn from appellate courts:

> First, we look to the degree of diligence by the appellant prior to the date beyond which a continuance is sought. [Citation omitted.] Second, we consider whether the continuance would have served a useful purpose if granted. [] Third, we weigh the inconvenience that granting the continuance would have caused the court or the government. [] Fourth, we look to the amount of prejudice suffered by the appellant. [] These factors must be considered together, and the weight given to any one may vary from case to case. [] At a minimum, however, in order to succeed the appellant must show some prejudice resulting from the court's denial. []

Arnant v. Marquez, 772 F.2d 552, 556-57 (9th Cir. 1985),[8] citing United States v. Flynt, 756 F.2d 1352, 1359-61 (9th Cir. 1985).[9]

The essence of petitioner's claim is that he was denied his Sixth and Fourteenth Amendment rights by the trial judge by an arbitrary insistence on expeditiousness in the face of a justifiable request for delay until February or March of 2000 by Mr. Clinkenbeard.  Petition, pp. 17-27; Traverse, p. 6.  The arbitrariness, petitioner asserts, is evidenced by the fact that the only reason the judge gave for removing Mr. Clinkenbeard, which arose from the prosecutor's concern that Mr. Cummins might not be available to testify at the time of the requested date for trial, was a concern which the record contradicted.  Petition, pp. 10, 24-25, citing RTA[10] 58;

---

[7] First, defendant Studley had asked in two court appearances to have someone represent her who was not a licensed attorney; she was told she could represent herself but representation in court by another required a licensed lawyer; the Federal Public Defender had determined that she did not qualify for appointed counsel.  United States v. Studley, 783 F.2d at 938-39.

[8] Cert. denied, 475 U.S. 1099 (1986).

[9] Amended on other grounds, 764 F.2d 675 (9th Cir. 1985).

[10] Augmented Reporter's Transcript on Appeal.

1   Traverse, p. 7.  For good measure, petitioner, also cites Ohio v. Roberts, 448 U.S. 56, 73, 100 S.

2   Ct. 2531 (1980), for the proposition that preliminary hearing testimony may be admitted at a

3   criminal trial should a witness have become unavailable and in light of sufficient indicia of its

4   reliability.[11]  Traverse, p. 7 n. 3.   However, the court's review of the record indicates that the

5   trial judge was at least equally concerned with Mr. Clinkenbeard's dense work schedule and how

6   that would preclude, in her opinion, his ability, especially in light of the investigations he

7   indicated he intended to undertake, to be ready for trial in a reasonable time.  RTA 57, 59.

8          As to the prosecutor's apparent concern about Cummins' potential unavailability

9   at trial if it was delayed, petitioner argues that Mr. Clinkenbeard had observed that in the

10  People's own motion for a speedy trial, it was asserted that Cummins had "been completely

11  cooperative and reliable" since the case filing, that he "testified forthrightly and soberly at the

12  preliminary hearing in this case," and that the People had "confidence that he will continue to

13  cooperate and be available to testify at the trial in this case."  Petition, p. 7, RTA 37, citing CT

14  111.  Mr. Clinkenbeard also stated that his office had spoken with him and that he had been

15  living in Sacramento for about nine years and did not intend to go elsewhere:

16                 There is no realistic fear or threat of Mr. Cummings [sic]
                   disappearing or not being able to testify.  Everything that Mr.
17                 Cummings has said is supported by Mr. Frawley's motion that he
                   will be available to testify the same as a police officer witness or
18                 any other percipient witness. [¶] I mean there has been no
                   indication that there is a risk of losing Mr. Cummings prior to trial.
19                 In addition, his testimony has been preserved at the preliminary
                   hearing.
20  Petition, p. 8, RTA 37.

21          The prosecution's motion, however, nevertheless also referenced Cummins' lack

22  of a permanent residence and his status as a "self-admitted drug addict."  CT 111.

23          Petitioner emphasizes that after the May 21, 1999 preliminary hearing, following

24

25      [11] Roberts was abrogated by Crawford v. Washington, 541 U.S. 36, 68-69, 124 S. Ct.
    1354, 1374 (2004), to the extent that where testimonial statements are at issue, there can be any
26  other "indicium of reliability sufficient to satisfy" the Sixth Amendment's demands but
    confrontation, i.e., cross-examination.

appointment of the public defender's office, when Mr. Clinkenbeard sought a trial date in the

spring and the prosecution objected, that it was only at the hearing on May 25, 1999, that the

prosecution filed an amended information adding special circumstances allegations claiming the

crimes were committed during an attempted robbery, which subjected petitioner to the possibility

of a life without parole term.  Petition, p. 4, CT 17, RTA 1.  Prior to that Mr. Clinkenbeard on

May 25, 1999, had filed a declaration stating that he was representing defendants in multiple-

defendant homicide cases and had not yet completed, and did not expect to complete, his

investigation "for some time," asking for a trial date in the spring of 2000.  Petition, p. 4, CT 19.

At the June 8, 1999, trial date setting hearing, Mr. Clinkenbeard indicated that the special

circumstance allegations changed the nature of the case and would require even more time to

investigate and consult experts.  Petition, p. 4, CT 4, RTA 4-5.  In a June 23, 1999, response to

the prosecution's speedy trial motion, Clinkenbeard pointed out circumstances in an effort to

show the case was not simple and straightforward as the prosecution asserted, including

questions about the voluntariness of petitioner's custodial statements; inconsistent statements by

Cummins, one of the victims; a cross-racial identification issue; witnesses who could challenge

or enhance the credibility of petitioner and Cummins; a cluttered crime scene; position of the

Owens' body; the locations of Cummins and the spent ammunition; blood spatter pattern;

dilapidated condition of gun.  Petition, p. 5, CT 124-25.  Petitioner states that Mr. Clinkenbeard

told the trial court that he had essentially been sandbagged by the prosecutor's waiting for four

months until after the preliminary hearing to amend to assert a felony murder theory, that the

prosecutor, whose office had no clear policy, was acting in bad faith by making selective use of

Cal. Penal Code § 987.05 to get the public defender's office off certain cases with its greater

resources than a panel attorney would have, that petitioner and his family wanted him

(Clinkenbeard) on the case.  Petition, pp. 6-7, RTA  29-30, 35.  Petitioner also recounts from the

state appellate court opinion above, Mr. Clinkenbeard's representation to the judge in camera as

to the detailed investigation he intended to conduct.  Petition, pp. 8-9.  In denying the

continuance, relieving the public defender's office from representation of petitioner and just prior
to appointing a panel attorney, the trial judge stated:

> My analyses is this: Technically the Public Defender's Office was
> appointed following the Court's holding Mr. Jones to answer at the
> time of preliminary hearing.
>
> And as a standard, the public defender thereafter was immediately
> appointed, and you accepted the appointment, Mr. Clinkenbeard.
> Following that, almost immediately following that, was a colloquy
> between the Court and counsel regarding the concern of setting a
> trial date.
>
> At that point, you indicated that you were not in a position to try
> the case within the 60 days, to which Judge Tochterman made
> reference. Thereafter, Mr. Frawley indicated he was not stipulating
> to any delay and did indicate his concern about the trial proceeding
> a [sic] timely fashion.
>
> A specific time frame is mentioned at that point, and there is
> specific discussion regarding 1050 and 987.50 at that point. I feel
> that essentially that discussion and the proceedings took place
> while the public defender was appointed in the case and clearly
> was representing Mr. Jones, that that appointment was impliedly
> continued on a representation that was consistent with 987.05.
> And it is quite clear based on the declaration that's been filed since
> that time and the information that's been presented in subsequent
> arguments that you cannot be prepared with what the Court
> considers a reasonable time frame.
>
> And you are, in fact, as stated in your declaration - - not to take
> away from you at all, Mr. Clinkenbeard - - but that you are, in fact,
> a very busy man with a trial schedule which included a trial at the
> time you received this assignment, a two-defendant trial scheduled
> in June, a three-defendant trial in August, thereafter a trial
> scheduled in November, and a four-defendant case that at that
> point was over a year old and apparently had yet to be set.
>
> In my view, quite honestly, you're too busy to try the case within a
> reasonable period of time. I understand the discussions we have
> had regarding the culture in this community. I understand that
> there are other cases that certainly take longer to get to trial than
> this. I've read the preliminary hearing transcript. I have
> considered what I consider to be the nature of this case.
>
> Your areas of investigation that you raised confidentially before the
> Court and the time frame that would need to be taken to diligently
> pursue the investigation, and I don't think it would take that long
> or should take that long. The factual and legal issues presented in
> this case, while they certainly may warrant the investigation that

25

1    you have outlined in a very diligent approach for preparation for
     trial are not complex by any stretch in my view.
2
     And the argument you had about the surprise robbery theory, I
3    can't understand how or why that would be a surprise.  It seems
     rather to jump out at one when you review this case.
4
     The People have asserted their statutory and constitutional rights to
5    a speedy trial.  Clearly both sides have one.  Your client is willing
     to waive it.  The People are not.  We have certain uncertainties, and
6    the problems and potential prejudice and the undue delay in this
     case.
7
     I don't believe that a homeless person is as reliable or predictable a
8    witness as someone that you refer to as a police officer.  There are
     uncertainties in all of our lives.  But more certainly in the lives of
9    someone who is homeless, who changes locations, who is not tied
     to a particular place and much more vulnerable to the community.
10   Their health and conditions varies over a period of time.

11   None of us can predict what will happen over the next year, but I
     don't find Mr. Frawley's condition in wanting to try to have Mr.
12   Cummings [sic] available and healthy at the time of trial to be
     unreasonable.  And his concerns, I think, were somewhat justified
13   under the circumstances.  It is a key witness, an eyewitness to the
     shooting.
14
     All right.  At this point, therefore, for these reasons, the Court is
15   finding that Mr. Clinkenbeard is unable to represent that he can try
     the case within a reasonable period of time, and that the basis - -
16   the primary basis in the Court's view for that inability is that [sic] a
     quite full trial schedule, and that is not a justification for delay
17   under 987.05.

18   Countered with the interests of the People and the Prosecution of
     the case which would have a greater chance of securing the
19   presence of their necessary witness, I'm going to order the Public
     Defender's Office be relieved, that there is no attorney in that
20   office that's in a position to take that case.

21   That would have been my other option had there been someone
     available to do so.  Mr. Clinkenbeard, you simply stated that is not
22   feasible.

23   RTA 56-59.

24           This court finds that petitioner has raised legitimate arguments, as did Mr.

25   Clinkenbeard before the trial court, supporting the granting of a trial date continuance in this

26   matter.  However, what petitioner has not shown is how the denial violated clearly established

26

1   federal law in an AEDPA unreasonable fashion, and although petitioner does not believe it

2   necessary, there is also no showing of prejudice.[12]

3          No Supreme Court authority sets forth the precise factors to be considered by a

4   trial judge in weighing whether or not to grant a defense counsel's request for a trial continuance.

5   The Ninth Circuit weighs the degree of diligence by the appellant before the continuance was

6   sought; whether the continuance, if granted, would have served a useful purpose; the

7   inconvenience to the court or the government in granting the continuance; the amount of

8   prejudice suffered by the appellant, with appellant, at a minimum showing some prejudice from

9   the court's denial.  Arnant v. Marquez, 772 F.2d at 556-57 (9th Cir. 1985).  In this case,

10  petitioner's counsel request, made some four months after he was assigned to defend petitioner

11  and promptly after the preliminary hearing before a trial date had been set does not show a lack

12  of diligence.  The trial court was not moved by petitioner's counsel's representation that the

13  amended special circumstance charge could have set counsel back in light of the case factors.[13]

14  The trial judge did not appear to have been persuaded that even the requested continuance could

15  have been sufficient with Mr. Clinkenbeard's inarguably heavy caseload to which he was already

16  committed in combination with the litany of investigative tasks in the instant case he anticipated

17  would need to be completed and he also represented that other attorneys in the public defender's

18  office could not have gone to trial earlier.  The inconvenience to both the trial court and the

19  prosecution of delaying trial on what both perceived to be, despite petitioner's counsel's

20  representation, a case lacking in complexity is arguably palpable.  Nor does petitioner make a

21  showing of prejudice, although in the original pro se petition, petitioner attempts to contrast what

22

23          [12] In a case, unlike the one here, where a defendant who can afford his own counsel is
    erroneously deprived of his choice no additional prejudice need be shown to constitute a Sixth
24  Amendment violation.  United States v. Gonzalez-Lopez, 548 U.S. 140, 146-148, 126 S. Ct.
    2557 (2006).
25

26          [13] The special circumstances essentially added only a new theory, not new facts to those
    which were already known.

1   his counsel did at trial with what he states Mr. Clinkenbeard intended to do (i.e., that his counsel

2   at trial did not move to exclude petitioner's statement to police, used only one expert witness

3   (instead of four), did not raise the specter of third-party culpability, and failed to object to an

4   allegedly improper statement in the prosecution's closing argument in rebuttal.  Pro se Petition,

5   pp. 30-31.

6   　　　　　Moreover, even if this court or others might have made a different response to

7   the application for a trial continuance in this context; that is, even if this court were to find the

8   state Supreme Court's decision to be erroneous, that is simply insufficient to warrant habeas

9   relief.   Petitioner has not demonstrated the objective unreasonableness of the state court's

10  decision in light of established Supreme Court authority, which as previously stated, grants broad

11  discretion to trial courts in deciding whether to grant or deny continuances and prohibits "only an

12  unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for

13  delay...."   Morris v. Slappy, 461 U.S. at 11-12, 103 S. Ct. at 1616 (citations omitted).   In other

14  words, while it cannot be said that petitioner's counsel's request for a continuance was

15  unjustifiable, neither is there an adequate showing that the denial was based only on an arbitrary

16  and unreasoning insistence upon expediting the trial.  The petition should be denied.

17  　　　　　Accordingly, IT IS HEREBY RECOMMENDED that the petition be denied.

18  　　　　　These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

20  days after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23  shall be served and filed within fourteen days after service of the objections.  The parties are

24  \\\\

25  \\\\

26  \\\\

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: 05/04/2011

4                                                    /s/ Gregory G. Hollows

5                                          _____
                                           GREGORY G. HOLLOWS
    GGH:009                                 UNITED STATES MAGISTRATE JUDGE
6   jones1421.fr

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26