IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DONALD JONES,

           Petitioner,                   No. CIV S-03-1421 KJM GGH P

    vs.

D.L. RUNNELS, Warden, et al.,

           Respondents.          <u>AMENDED FINDINGS AND</u>
                                               <u>RECOMMENDATIONS</u>

_____/

*Introduction and Summary*

        *Ipse dixit*– literally translated, "he himself said it;" used in English to describe an assertion to be accepted without proof simply because it was stated.

        The mere affixing of a constitutional claim label to a factual situation involving the application of state law does not create a federal claim. The factual situation at bar involves, simply put, the initial, conditional appointment of counsel under state law, and the subsequent final appointment of another counsel when it appeared that conditional counsel would not be able to adjust his schedule within the time parameters to set the trial date deemed reasonable by the trial court. Despite the sincere, vigorous *ipse dixit* of petitioner's counsel that a constitutional label should stick, either involving the Sixth Amendment, the Fourteenth Amendment, or both, the situation here cannot be fit within a constitutional claim, and only involves state law. After

1

1  vacating the initial Findings and Recommendations, hearing the parties further, and after

2  revisiting the opinion of the California Court of Appeal, the undersigned concludes that the

3  appellate court correctly viewed this situation as raising only a question of state law, and not one

4  of constitutional magnitude.  As such, the propriety of the state law ruling is not cognizable in

5  federal habeas corpus.

6        In the alternative, assuming that the described situation involves the claim of an

7  alleged violation of a constitutional right, petitioner has failed to show that he is entitled to relief.

8        *General Background*

9        Petitioner, a state prisoner proceeding with appointed counsel, has filed this

10  application pursuant to 28 U.S.C. § 2254.  Petitioner was sentenced, in 2000, to a term of fifty

11  years to life to be served consecutively to a sentence of ten years, having been convicted, in 1999,

12  on count 1, murder in the first degree, and count 3, assault with a firearm and personal use of a

13  firearm and great bodily injury allegations found true.  Memorandum of Points and Authorities in

14  Support of Petition (hereafter, Petition), p. 11,[1] citing CT 283, RT 377-78; Answer, p. 7, citing

15  CT 164-66, 171-72, RT 373.  Petitioner proceeds on one ground: "the trial court violated his

16  right to counsel and due process when it denied counsel's request to schedule the trial one year

17  from the date of the crime, and instead removed the entire public defender's office from the case

18  and replaced it with a 'conflicts panel' attorney."  Petition, p. 2.[2]

---

19        [1] The court's electronic pagination is referenced.

20

21        [2] This habeas matter, in which petitioner proceeded with appointed counsel, was stayed,
pending exhaustion of petitioner's ineffective assistance of counsel claim, for more than five
years without the filing of an amended petition, notwithstanding that in the April 26, 2004,

22  Order, staying this case, petitioner had been "directed to file an amended petition containing all
of petitioner's claims immediately upon exhaustion of state court remedies."  An order issued, on

23  September 21, 2009, directing petitioner's counsel to show cause why the stay in this matter
should not be lifted.  Evidently, the ineffective assistance of counsel claim was never exhausted

24  in state court. The stay was ultimately lifted on November 19, 2009, and briefing on this matter
was ordered.  Petitioner filed a supporting Memorandum of Points and Authorities on January 4,

25  2010; respondent filed an Answer on May 26, 2010 (following a 60-day extension of time).
Finally, following two extensions of time (for 45 and then 14 more days), a Traverse was filed on

26  August 26, 2010.

*Issues*

The procedural history of this case indicates a confusion of issues, or more correctly, a confusion as to what aspect of the Sixth Amendment (right to counsel) or the Fourteenth Amendment (right to due process) might apply to this case.  In arguing that the Sixth and Fourteenth Amendments were violated, petitioner has alternatively stated that:

> (1) he was denied due process when counsel's requested trial date was refused thereby requiring another counsel to be appointed, i.e., DPD Clinkenbeard could not "continue" to represent petitioner; the error was to be judged by the <u>Chapman</u> harmless error standard. Appellant's Opening Brief (AOB) at 36

> (2) "By its action the court effectively prevented appellant from being represented by the *attorney of his choice*, violating appellant's Sixth Amendment right to counsel..."  AOB at 37 (emphasis added); but see "Appellant acknowledges that a defendant is not entitled to representation by any particular public defender."  AOB at 40

> (3) "whether appellant's 'Sixth Amendment right to counsel outweighs any statutory rights asserted by' the prosecution..." Appellant's Reply Brief at 3

> (4) "Importantly, a defendant who establishes that his *right to counsel of choice* was violated need not demonstrate prejudice...." "And while trial courts have 'wide latitude in *balancing the right to counsel of choice* [against scheduling concerns]' and retain the discretion to 'make scheduling [decisions] that effectively exclude a defendant's first choice of counsel...that discretion is not unlimited and must yield, in certain circumstances, to defendant's Sixth Amendment right."   Amended Memorandum of Points and Authorities in Support of Petition at 17 (emphasis added).

> (5) "[Petitioner]... does *not* claim that he has a right to counsel 'of choice,' nor does he contend that the state trial court 'failed to exercise its discretion in appointing him the counsel of his choice.'" Traverse at 6 (continuing on to say that the "removal" of Clinkenbeard was "arbitrary.") (Seemingly a due process issue, if a federal claim at all)

Assuming without analysis that petitioner had set forth a federal claim, the undersigned initially described the issue: "The essence of petitioner's claim is that he was denied his Sixth or Fourteenth Amendment rights by the trial judge by an arbitrary insistence on expeditiousness in the face of a justifiable request for delay...."  Findings and Recommendations,

3

1  vacated, at 22.  The undersigned did not parse out what aspect of the Sixth Amendment might be

2  at issue.

3  　　　　　On objections, petitioner's heading on the merits mirrored the issue set forth by

4  the undersigned above, Objections at 21, but then petitioner repeated his off- and-on argument

5  that the Sixth Amendment issue was "counsel of choice."  "Importantly, a defendant who

6  establishes that his right to *counsel of choice* was violated need not demonstrate prejudice...." Id

7  Respondent believed that petitioner was raising a new or abandoned issue.  The undersigned

8  vacated his Findings and Recommendations to obtain clarification of what the issue might be.

9  After hearing, and especially after further post-hearing reflection, the undersigned finally finds

10  the issues as follows:

11  　　　　　1. What is the standard of review when a state court has determined that no

12  federal issue exists, and rules solely on the basis of state law;

13  　　　　　2. Does the final ruling of the state appellate court involve only an issue of state

14  law not cognizable in federal habeas corpus;

15  　　　　　3. In the alternative, assuming the correct assertion of a constitutional claim, what

16  is the nature of that constitutional claim, and whether AEDPA deference would apply to this

17  alternative claim.

18  　　*Background*

19  　　　　　Petitioner states that on January 26, 1999, a complaint was filed charging

20  petitioner with the murder of Catherine Owens and the attempted murder of Duane Cummins on

21  January 20,[3] 1999, further alleging that petitioner had personally discharged a firearm in

22  committing the crimes.  Petition, p. 3, citing CT 12-13.  Petitioner was arraigned on January 26,

23  1999, and the public defender's office appointed to represent him.  Id., citing CT 1.  Thereafter,

24  on or about February 1, 1999, Deputy Public Defender Tommy Clinkenbeard was "assigned" to

25  ――――――――――

26  　　　[3] Actually, petitioner states that the offenses were alleged to have occurred on January 21,
1999, but the record cited identifies the date as January 20, 1999.

4

1    represent petitioner.  Id., citing CT 19.   Mr. Clinkenbeard represented petitioner at the

2    preliminary hearing on May 21, 1999.  Id., CT 21, 91-92.

3                    At this point, the unpublished state court opinion accurately sets forth the

4    background of petitioner's claim:[4]

5            On May 21, 1999, at the conclusion of the preliminary hearing, the
             court inquired whether defendant requested counsel. He did and
6            indicated he was indigent. The following discourse ensued:

7            "THE COURT: The public defender is appointed to represent Mr.
             Jones.
8
             "MR. CLINKENBEARD: Accept the appointment and waive any
9            further reading that Mr. Jones-

10           "THE COURT: Do you waive any further arraignment on the
             Information?
11
             "MR. CLINKENBEARD: Yes, we do.
12

13   _____

14       [4]  The state court of appeals also sets forth the underlying facts of the commitment
     offense as follows (which facts were adopted in petitioner's Petition for Review to the California
     Supreme Court–see respondent's Lodged Document 2, Petition for Review, p. 3): "About 11
15   p.m. on January 20, 1999, Duane Cummins, homeless and addicted to drugs and alcohol, arrived
     at his makeshift shelter with a tarp located behind a liquor store. Catherine Owens, Cummins's
16   girlfriend, met Cummins at the shelter and the two sat down to eat. At 11:15 p.m., Cummins
     heard someone kicking on the wood gate which led to the shelter. When the gate gave way,
17   Owens asked, "Who is there?" Defendant threw back the tarp and the light from a streetlamp
     illuminated Owens while Cummins remained in the dark.  Defendant pointed a gun at Owens and
18   demanded, "Give me everything you've  got." As Cummins began to explain that they had
     nothing, defendant fired the gun a total of five times from two-to-six feet away from Owens.
19   Owens was shot twice in the chest and died. Cummins was shot in the right hand which he raised
     when defendant began shooting. Defendant fled the scene. Cummins called 911 from a nearby
20   telephone.
             Defendant was interviewed and denied knowing anything about the shooting.  He also
21   denied having or owning a gun. Defendant changed his story and admitted going to Cummins's
     shelter to steal. Defendant was surprised to find anyone there and when Cummins reached for
22   something, defendant fired.  Afterwards, defendant reloaded his gun with five bullets he had in
     his pocket.  Defendant hid the gun in the bushes near his apartment where the officers found it.
23   Bullets from the gun killed Owens.
             Dr. Susan Garcia-Swain testified for the defense. She practiced addiction and holistic
24   medicine. She interviewed defendant who claimed he had consumed eight beers and a half liter
     of liquor on the date of the offenses.  He also claimed that he had been a chronic drinker from the
25   age of 12 years. Based on her interview, Dr. Garcia Swain concluded defendant had a
     blood-alcohol level of .2 at the time of the offenses." People v. Jones, 2002 WL 399478 *1 (Cal.
26   App. 3rd Dst. 2002).

"THE COURT: Does Mr. Jones desire to plead not guilty and to deny the special allegations?

"MR. CLINKENBEARD: Yes, we do.

"THE COURT: Do you plead not guilty to each of the crimes charged against you, Mr. Jones?

"DEFENDANT: Yes, sir.

"THE COURT: And do you deny the two special allegations?

"DEFENDANT: Yes, sir.

"THE COURT: Pleas of not guilty are entered, and denials with the special allegations are entered.

"The 55th day will be July 15th. I would like to set the case on or before July 15th. What date do you request, Mr. Clinkenbeard?

"MR. CLINKENBEARD: Judge, I spoke with the D.A. about this; I'm not going to be able to set a trial date in this case until sometime next spring. I am booked for the rest of this year with mostly co-D homicide trials. I am going to ask for a trial date sometime in March or April–

"THE COURT: You know what you should do then: I really think we ought to put a matter over for a couple of days, and I really think that, especially in this case, you ought to comply with Section 1050 and file a written declaration.  Doesn't matter if there's a stipulation; it's mandatory.  You ought to take a look at Section 987.[0] 5 of the Penal Code.

"MR. FRAWLEY: Your Honor, I'm not stipulating to anything.  I do wish the trial to be set within a reasonable amount of time, and I think March of next year is unreasonable and that we ought to investigate the possibility that another lawyer should be assigned to this case.

"THE COURT: I think that you ought to take a look at Section 1050 and Section 987[.]05. You ought to sign a declaration and let a judge make a decision based on a proper declaration.

*3 "MR. CLINKENBEARD: Okay."

The matter was continued until May 25, 1999.  At the hearing on May 25, 1999, an amended information was filed adding the special circumstance which alleged that defendant murdered Owens during an attempted robbery.  Also on May 25, 1999, Clinkenbeard filed a declaration stating that investigation was not complete and that he had conflicts in his trial schedule which

6

precluded his ability to proceed to trial within the statutory time period.  He asked for a trial date in the "spring of 2000."  In pertinent part, Clinkenbeard stated: "This case was assigned to me on or about February 1, 1999.  Two other homicides were assigned to me within a month of this case. I was in a two month trial when these cases were assigned.  I have a two defendant homicide starting in June.  I have a three defendant homicide starting in August.  I have another homicide set in November. Also, this week, I'll be setting a trial date on a four defendant homicide case that is already one year old."  The matter was continued to June 8, 1999. Arraignment on the amended information and further proceedings on the declaration concerning a trial date were deferred until then.

On June 7, 1999, Clinkenbeard filed a motion to dismiss the special circumstance allegation, added by the amended information, on the grounds of insufficient cause and lack of jurisdiction by the superior court.  On June 8, 1999, the trial court chose to hear argument on the motion to dismiss prior to deciding the counsel and trial date issues, and continued the matter to June 18, 1999.

On June 10, 1999, the prosecutor filed a brief asserting the prosecution's right to a speedy trial.  He relied upon section 987.05, which allows the appointment of counsel who represents that he or she is ready to proceed with trial in a reasonable time. The prosecutor argued that the court had discretion to remove counsel who cannot try the case at the scheduled trial date, and asserted that a fall 1999 trial date provided ample time for preparation counsel. He noted Cummins's availability was a concern due to his homelessness and addiction to narcotics.  The prosecutor also filed an opposition to the motion to dismiss the special circumstance allegation.

At the June 18, 1999, hearing, the court denied Clinkenbeard's motion to dismiss the special circumstance allegation. Clinkenbeard claimed he had no idea the appointment issue would be litigated on that date and obtained a continuance until June 25, 1999.

On June 23, 1999, Clinkenbeard filed a response to the prosecution's assertion of speedy trial rights and other arguments, claiming a number of points.  The case was not straightforward and simple but rather complex because the prosecutor was proceeding on a felony murder theory, a different theory than advanced at the preliminary hearing.  A trial date one year from the date of defendant's arrest was the custom and practice in the county for the type of case.  The prosecutor acted in bad faith based on the added special circumstance and on discussions prior to the preliminary hearing.  The defendant's right to counsel outweighed any state right to a speedy trial and that counsel's removal without

7

substantial justification would violate defendant's right to counsel. The prosecutor selectively cited section 987.05 but failed to show the defense requested trial date "in February or March" was unreasonable or disruptive.  The public defender also claimed the prosecutor's concerns about Cummins's availability were illegitimate, that the court should refuse to follow Williams v. Superior Court (1996) 46 Cal.App.4th 320, 53 Cal.Rptr.2d 832, that section 987.05 was inapplicable because counsel had made no guarantee that he would be ready to proceed, and that section 987.05 is unconstitutional because it denied equal protection.

*4 At the hearing on June 25, 1999, Clinkenbeard added that it was the desire of defendant and his family that Clinkenbeard remain on the case.  Clinkenbeard asserted that the prosecution had to show misconduct on Clinkenbeard's part to remove him as counsel.  The prosecutor replied that Clinkenbeard's appointment was contingent upon a showing that he would be ready to proceed at a trial date set. The prosecutor represented that his office could try the case in two weeks, "It is that simple."  Clinkenbeard disputed that the magistrate set the matter for evaluation under section 987.05.

At an in camera hearing the same day, Clinkenbeard informed the court of his planned investigation and theories including: his plan to have the victim's blood retested; his plan to consult with a drug expert concerning the victim's blood alcohol content, as well as his client's; his plan to consult with an "interrogation" expert to review defendant's statement to determine whether it was voluntary; his plan to consult with a ballistics expert to examine the gun and random pattern of gunfire; his plan to consult with a crime scene expert to assist in demonstrating that defendant had no intent to commit a robbery; his plan to consult with a blood splatter expert to refute intent and support a self-defense theory; his plan to research a Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694] issue as well as the lack of fingerprints on the gun; his plan to obtain a booking photograph of defendant and better quality autopsy photographs; his plan to reinterview witnesses who were with defendant the night of the shootings and who gave inconsistent statements concerning defendant's whereabouts; his plan to locate a third party, related to defendant or his girlfriend, and a person known to Cummins who allegedly admitted to the shootings; and his plan to reinterview Cummins who did not seem to be straightforward about his or Owens's condition the night of the shootings or the identity of the shooter.

After argument, the court said that Clinkenbeard's appointment as counsel for defendant was dependant [sic] upon his availability for trial.  He concluded that Clinkenbeard had not shown he was available within a reasonable period of time, within the meaning of section 987.05, due to his trial schedule which included a current trial at the time of assignment to this case, a two-defendant trial in June, a three-defendant trial in August, a trial in November and a

8

1    four-defendant trial to be scheduled which was over a year old.
     The court stated its opinion that the nature of the case was not
2    complex despite counsel's claim he was surprised by the
     felony-murder theory.  The court also noted the prosecution's
3    speedy trial rights and concerns about its key witness's availability.
     Based on Clinkenbeard's representation that no one else in the
4    public defender's office was available to take the case, the office
     was relieved and a panel attorney was appointed.  Subsequently,
5    trial was scheduled for October 12, 1999, but eventually the case
     was tried in November 1999.

6

7    People v. Jones, 2002 WL 399478 *2-*4 (Cal. App. 3rd Dist. 2002).

8        *Discussion*

9            A. The Standard of Review for Determining Whether A Federal Claim Has Been
             Stated

10

11           All parties agree that with the denial of petition for review by the California

12   Supreme Court, the decision of the California Court of Appeal was the final decision by the state

13   courts.  See Cal. Rules of Court 8.366(b)(1); the denial of review by the state supreme court was

14   not a decision on the merits.  Williams v. Cavazos, __F.3d__, 2011 WL 1945744 (9th Cir. 2011).

15   It is the Court of Appeal's  decision which is reviewed as the final explication on the merits in

16   the case.  Id.[5]

17           The Court of Appeal found in this case that petitioner had misidentified the real

18   issue in the case, and despite petitioner's invocation of federal constitutional rights, the state

19   court case was decided only on issues of state law.  More will be said about this in the next

20   section.  However, it is necessary to determine initially whether AEDPA has any play in this

21   initial decision.  By definition, it does not, and whether a posited scenario raises a federal claim

22   is determined *de novo.*

23           Title 28, section 2254(d) relates the deference which is to be given to state court

24   _____

25       [5]At one point in the objections/reply, respondent "looks back" to the trial court's ruling.
     However, the "look back" stops at the highest state court to issue an explicated ruling.  While at
26   times, a lower court's ruling on the same issue may supplement the higher court's explicated
     ruling, it cannot supplant it.

1  determinations when such determinations are "*on the merits*." (Emphasis added).  Of course, the

2  "merits" are merits of the federal claim, not issues of state law.  It has been the law for decades

3  that federal courts do not sit in habeas to rectify errors of state law.  See Estelle v. McGuire, 502

4  U.S. 62, 67-68, 112 S.Ct. 475 (1991).  This had to have been known by the drafters of the federal

5  AEDPA provision, subsection (d) as amended, as subsection (a) allows federal review only to

6  those in custody in violation of *federal* law.  It follows that when discussing adjudications "on

7  the merits," in subsection (d), the subsection deals only with violations of federal law which were

8  adjudicated on the merits.  It is possible that the state court simply ignored the federal issue

9  plainly presented, and the federal courts have to determine such.  It is also possible that petitioner

10 has simply affixed a federal label to a state law scenario, and the federal courts will have to

11 determine that as well.  The point here is that the federal courts will determine such on their own

12 independent, *de novo* review of the record.

13          An important corollary to the above is that federal courts may not rule on state law

14 issues, and are bound by state court interpretations of those issues *unless* the state interpretation

15 is so strained that it becomes simply a subterfuge to avoid the federal issue that is otherwise plain

16 to see.  Butler v. Curry, 528 F.3d 624, 642 (9th Cir. 2008).   A federal court must examine this

17 exception *de novo* as there will be no state decision acknowledging an arbitrary determination on

18 state law for the purposeful avoidance of federal law.

19                      B. The "Counsel" Claim Involves Only an Interpretation of State Law

20          Not every issue involving "counsel" will automatically find an analytical home in

21 the Sixth Amendment.  If an indigent person has been given effective and non-conflicted counsel

22 for all critical stages of the prosecution, there is nothing left for the Sixth Amendment to

23 accomplish.  Certainly, not all the state logistical requirements for the appointment of counsel in

24 state court are issues of Sixth Amendment significance.

25          The Court of Appeal recognized that petitioner had attempted to "federalize" his

26 claims, and the Attorney General had resisted this labeling:

1    Defendant frames the issue as the denial of a continuance of trial
     and removal of appointed counsel. The Attorney General claims
2    the issue concerns the appointment of counsel in the first instance.

3    People v. Jones, 2002 WL 399478 at *2.

4          The Court of Appeal found that the issue was one of appointment under state law,

5    not removal of counsel:

6          We shall conclude the trial court did not abuse its discretion in
           refusing to appoint Clinkenbeard who requested an unreasonable
7          trial date.

8    Id. [6] (Emphasis added).

9          The Court of Appeal reached these conclusions by an analysis focused on state

10   law only:

11         *5 The trial court has a duty to appoint an attorney in compliance
           with section 987.05, "who represents, on the record, that he or she
12         will be ready to proceed with the preliminary hearing or trial, as the
           case may be, within the time provisions prescribed in this code for
13         preliminary hearings and trials, except in those unusual cases
           where the court finds that, due to the nature of the case, counsel
14         cannot reasonably be expected to be ready within the prescribed
           period if he or she were to begin preparing the case forthwith and
15         continue to make diligent and constant efforts to be ready.  In the
           case where the time of preparation for preliminary hearing or trial
16         is deemed greater than the statutory time, the court shall set a
           reasonable time period for preparation.  In making this
17         determination, the court shall not consider counsel's convenience,
           counsel's calendar conflicts, or counsel's other business.  The court
18         may allow counsel a reasonable time to become familiar with the
           case in order to determine whether he or she can be ready.  In cases
19         where counsel, after making representations that he or she will be
           ready for preliminary examination or trial, and without good cause
20         is not ready on the date set, the court may relieve counsel from the
           case and may impose sanctions upon counsel, including, but not
21         limited to, finding the assigned counsel in contempt of court,
           imposing a fine, or denying any public funds as compensation for
22         counsel's services.  Both the prosecuting attorney and defense

23
         [6]The appellate court also stated: "Defendant contends the trial court abused its discretion
24   in refusing to schedule trial in February or March 2000, as requested by Clinkenbeard and erred
     in removing and replacing Clinkenbeard with a conflicts panel attorney. FN4 [omitted] We
25   disagree with defendant's interpretation of the record."   2002 WL 399478 at * 6.  Again, the
     issue to the Court of Appeal was one of initial appointment, not removal of an appointed
26   attorney.

                                         11

counsel shall have a right to present evidence and argument as to a reasonable length of time for preparation and on any reasons why counsel could not be prepared in the set time."

Section 1049.5 provides: "In felony cases, the court shall set a date for trial which is within 60 days of the defendant's arraignment in the superior court unless, upon a showing of good cause as prescribed in Section 1050, the court lengthens the time.  If the court, after a hearing as prescribed in Section 1050, finds that there is good cause to set the date for trial beyond the 60 days, it shall state on the record the facts proved that justify its finding. A statement of facts proved shall be entered in the minutes."

"Neither the convenience of the parties nor a stipulation of the parties is in and of itself good cause." (§ 1050, subd. (e).) "When deciding whether or not good cause for a continuance has been shown, the court shall consider the general convenience and prior commitments of all witnesses, including peace officers.  Both the general convenience and prior commitments of each witness also shall be considered in selecting a continuance date if the motion is granted.  The facts as to inconvenience or prior commitments may be offered by the witness or by a party to the case." (§ 1050, subd. (g).)

*6 The trial court's assignment of counsel for an indigent defendant pursuant to section 987 is reviewed for abuse of discretion. *(Harris v. Superior Court* (1977) 19 Cal.3d 786, 795-796, 140 Cal.Rptr. 318, 567 P.2d 750; *Drumgo v. Superior Court* (1973) 8 Cal.3d 930, 934-935, 106 Cal.Rptr. 631, 506 P.2d 1007; see also *People v. Daniels* (1991) 52 Cal.3d 815, 846-847, 277 Cal.Rptr. 122, 802 P.2d 906.) No abuse of discretion is shown by the mere fact the trial court failed to appoint defendant's choice of counsel who is willing to accept appointment. (*Harris, supra*, at pp. 795-796, 140 Cal.Rptr. 318, 567 P.2d 750.)

*****

*The facts reflect that counsel's appointment was contingent upon his showing that a trial date far beyond the statutory requirement was reasonable*. At the conclusion of the preliminary hearing, the magistrate appointed "the public defender" to represent defendant and proceeded to set a trial date within the 60-day statutory requirement for trial. Clinkenbeard represented that he would be unavailable that soon due to conflicts in his schedule and requested a date far beyond the statutory requirement. The prosecutor objected, stating that the date requested by defense counsel was not reasonable and that another attorney should be assigned. The magistrate sent the case back to home court for Clinkenbeard to demonstrate that the date he requested was reasonable, specifically referring to both sections 987.05 and 1050.

Based on this record, reasonably interpreted, the appointment was

subject to an evaluation of Clinkenbeard's request for a trial date far beyond the statutory requirement. As the trial court determined, the "appointment was impliedly continued on a representation that was consistent with [section] 987.05."

*Under the circumstances, the court had the authority to reconsider its appointment. "Removal" of counsel is not the issue.* We thus consider whether the trial court abused its discretion in finding a reasonable period for preparation was far exceeded by Clinkenbeard's request for a trial date.

Sections 987.05 and 1049.5 require the trial court to appoint only an attorney who represents on the record that he will be ready for trial within 60 days 'except in those unusual cases' where more time is required for preparation. In such case, the court is required to set a reasonable time period for preparation which excludes from consideration 'counsel's convenience, counsel's calendar conflicts, or counsel's other business.'(§ 987.05.)

Initially, at the conclusion of the preliminary hearing, Clinkenbeard relied upon his scheduling conflicts in requesting a trial date beyond the statutory period stating that he was 'booked for the rest of this year with mostly co-[defendant] homicide trials .' He subsequently filed a declaration stating that investigation on the case was not complete and fully explained his scheduling conflicts. He requested a trial date in the spring of 2000.

*7 The prosecution opposed the date, arguing that a fall 1999 trial date should be ample time for preparation and asserted its speedy trial rights. The prosecution also stated its concern for its key witness, Cummins, based on his homelessness and addiction to narcotics.

In response, Clinkenbeard added numerous reasons in order to justify a lengthy period of time for preparation including defendant's desire that he remain on the case, the complexity of the case, the custom and practice of the county to go to trial one year from the date of arrest, the prosecutor's bad faith for adding a special circumstance, defendant's right to counsel, the prosecutor's selective use of section 987.05 which in any event was unconstitutional, and disputed the prosecutor's concerns about Cummins's availability. With respect to further investigation, Clinkenbeard listed numerous areas including consultation with various experts, researching a suppression issue, retesting of the victim's blood, obtaining better quality photographs, reinterviewing witnesses, and locating a possible third party who was responsible for the shootings.

All of the foregoing information was considered by the trial court in making its determination that Clinkenbeard's request for a spring 2000 trial date was not a reasonable request for time for

13

1
2
3
4
5
6
7

preparation of the case.  The court specifically cited Clinkenbeard's numerous scheduling conflicts, including a few multiple defendant trials, which suggested that Clinkenbeard would be in trial continuously and precluded time for preparation of the type he planned to do in the present case. The court disagreed that the case was complex and stated that the addition of the special circumstance allegation should have come as no surprise.  The court noted that although defendant was willing to waive his right to a speedy trial, the prosecution was not primarily on the basis of its concern for its key witness, a homeless person. The entire public defender's office was relieved based on Clinkenbeard's representation that no one else in the office could prepare the case any sooner.

8
9
10
11

Defendant simply argues that the court abused its discretion in denying Clinkenbeard's continuance request based on the numerous areas of investigation outlined for the court which constituted good cause under section 1050. The court specifically found that due to counsel's scheduling conflicts, he could not complete investigation in the current matter in a timely manner for purposes of section 987.05 and section 1049.5.

12
13
14
15

Section 987.05 specifically provides that counsel's scheduling conflicts were not to be considered in determining a reasonable time period for preparation.  Defendant has failed to demonstrate that the trial court abused its discretion in concluding that the *public defender was unavailable for appointment* under section 987.05.

16   People v. Jones, 2002 WL 399478 at *5-*7. (Emphasis added)

17              Although as seen above in the Issues section petitioner waffles on the issue, the

18   law is clear that an indigent defendant does not have the right to choose his counsel; such is not a

19   recognized claim under the Sixth Amendment.

20
21
22
23
24
25
26

"The Sixth Amendment's right to counsel encompasses two distinct rights: a right to adequate representation and a right to choose one's own counsel. The adequate-representation right applies to all defendants and 'focuses on the adversarial process, not on the accused's relationship with his lawyer as such.' " *Daniels v. Lafler*, 501 F.3d 735, 738 (6th Cir.2007) (quoting *United States v. Cronic*, 466 U.S. 648, 657 n. 21, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). Indigent defendants have a constitutional right to effective counsel, but not to have a specific lawyer appointed by the court and paid for by the public. "[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale v. United States*, 491

14

1          U.S. 617, 624, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989).

2     United States v. Rivera-Corona, 618 F.3d 976, 979 (9th Cir. 2010).

3          Under the present circumstances, and because an indigent defendant has no right

4     to choose counsel in that appointment process, the Sixth Amendment is not implicated at all in

5     the state law logistics surrounding the appointment of counsel, i.e., the "who" in the appointment

6     process.   It is clear that the Court of Appeal viewed this matter as one of contingent appointment

7     under state law in the first instance, the condition for which (having a reasonably available

8     calendar for trial setting) was not satisfied.  If viewed in this sense, as the Court of Appeal surely

9     did, petitioner's claim is of no more constitutional significance than a denial, under state law, of

10    appointment of a particular counsel who had not obtained the required years of service for a case

11    of this type, or denial, under state law, of  appointment of a particular counsel who had been

12    suspended from practice for failure to pay dues, or a denial, under state law, of appointment of

13    particular counsel who was conflicted under state law (but not federal constitutional

14    requirements).

15         Petitioner's vigorous argument to the contrary—No!— Clinkenbeard *was*

16    *appointed and was removed* when the trial judge failed to afford him a "reasonable continuance"

17    [of a trial date which had not yet been precisely set]—is simply a disagreement concerning how

18    the appellate court viewed state appointment law.  He cannot prevail on such a disagreement.

19    Nor can petitioner merely substitute a constitutional label for a process which is solely a

20    logistical "who-will-be-appointed" process under state law.

21         Finally, the appellate opinion is not some type of subterfuge to avoid a clear Sixth

22    Amendment or Due Process issue.  Once it is seen that the scenario found by the appellate court

23    involved appointment of counsel in the first instance, the entirety of the  constitutional questions

24    drop out, be those questions of "right to choose counsel," or a due process right to obtain

25    reasonable continuances for manifest necessity *once appointed*.  The scenario actually found by

26    the appellate court under state law—one of initial or contingent appointment only, is not so

15

1   palpably unreasonable so as to invoke the subterfuge exception to the binding nature of state law.

2           It is true, as discussed at the hearing that on its face, the facts could be interpreted

3   as a claim for continuity of counsel, i.e., that once counsel is appointed, a defendant has some

4   type of right akin to a paying client, that counsel will not be removed absent some necessity.

5   However, that is not the interpretation of the record found by the appellate court and that

6   interpretation controls.

7           C.  Alternative Analysis Assuming a Constitutional Issue

8           The undersigned is loath to perform an alternative analysis assuming the existence

9   of a constitutional issue because there is no such issue.  But for the sake of completeness, the

10  undersigned will try.

11          Petitioner does not claim herein that his appointed counsel at trial was ineffective;

12  therefore, any assertion that his initial appointed counsel (Clinkenbeard) was "removed" and

13  another counsel appointed is a non-starter from a Sixth Amendment perspective.  Moreover, and

14  to repeat for emphasis, the Ninth Circuit has been clear—the *only* Sixth Amendment right an

15  indigent has is to effective assistance of counsel(including non-conflicted); he has no right to

16  choose or maintain appointed counsel.  United States v. Rivera-Corona, supra.  See also United

17  States v. Mendoza-Salgado, 964 F.2d 993, 1015-16 and n.12 (10th Cir. 1992) (discussing

18  continuances and one's right to choice of counsel, but finding in note 12 that the discussion was

19  not applicable to a defendant with appointed counsel); United States v. Espinosa, 771 F.2d 1382,

20  1410 n. 36 (10th Cir. 1985) (observing that "choice of counsel" and "continuity of counsel" were

21  essentially the same thing).  Espinosa is the converse of the situation urged by petitioner; but its

22  result is the one which should obtain here.  In that case initially appointed counsel was removed

23  just *days* before trial, and the question was whether *any* new counsel could be effective in such a

24  situation.  Notably, and contrary to petitioner's position here, Espinosa, an indigent defendant,

25  was tasked with proving Strickland prejudice—a task at which he failed.  Petitioner argues here

26  that he had a right to maintain Clinkenbeard as his counsel, and did not have to show prejudice

16

so long as the denial of the continuance was arbitrary.  Petitioner's argument is contrary to law and confuses the situation of retained versus appointed counsel.  He had no such right to continuity of appointed counsel, read "choice of counsel," as long as the new counsel could effectively represent him.  This is true whether one uses an AEDPA or *de novo* standard of review.

However, assuming that the above cited authority is "wrong," and that petitioner did have a right to continuity of appointed counsel, and further assuming that Clinkenbeard was actually appointed under state law, the issue would become, probably one of due process— whether the denial of Clinkenbeard's request for an extended trial date, a sort of request for continuance, was arbitrarily denied.

The undersigned first addresses the standard of review for this assumed issue.  At this juncture, petitioner is correct—the standard of review must be *de novo* because the appellate court declined to find any federal issue to adjudicate.  The undersigned cannot make the appellate opinion state something which it disavowed (and correctly as the undersigned has previously found.)  The only citation necessary is that given by petitioner in his initial objections, the recent case, Williams v. Cavasos, __F.3d__, 2011 WL 1945744 (9th Cir. 2011):

> To be sure, a state court may adjudicate the merits of a constitutional claim without citing federal precedent, and such a decision would be entitled to AEDPA deference. See, e.g., *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam). And under *Richter*, even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied," we must "presume[ ] that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." 131 S.Ct. at 784–785. Here, however, the Court of Appeal's decision was not "unaccompanied by an opinion explaining the reasons relief has been denied," id. at 784; rather the court provided a lengthy, reasoned explanation for its denial of Williams's appeal, but none of those reasons addressed her Sixth Amendment claim in any fashion, even indirectly.
>
> FN10. In contrast, in *Murdoch v. Castro*, 609 F.3d 983 (9th Cir.2010) (en banc), a plurality of the en banc court determined that the California Court of Appeal had "discuss[ed] and quote[d]

17

from the section of [the petitioner's] brief in which he raised" his
federal constitutional claim and had cited a state case that
discussed the federal constitutional right. It therefore stated that the
state court had adjudicated the petitioner's constitutional claim on
the merits, even though it "addressed [the] argument only
obliquely." *Id.* at 990 n. 6 (plurality opinion). Unlike in *Murdoch*,
here the state court did not address Williams's claim, obliquely or
otherwise, and there is not a scintilla of evidence that the Court of
Appeal decided the constitutional claim, in addition to a separate
claim that it discussed at length. The *Murdoch* court found an
"indication" that the state court had adjudicated the constitutional
claim on the merits; here, the total disparity between the court's
treatment in the opinion of Williams's statutory claim (reasoned in
detail) and her constitutional claim (not mentioned at all) provides
a strong "indication" that the claim was never adjudicated on the
merits.

2011 WL 1945744 * 8 & n.10.

Clearly, the appellate court did not adjudicate any federal claims.  The review for

the assumed issue is *de novo*.

Making all the assumptions necessary for petitioner, i.e., Clinkenbeard was

"removed" as counsel when his request for "continuance" was denied and that petitioner had

some type of right to continuity of counsel, the precise amendment at play is difficult to pinpoint.

Under the assumptions above, the undersigned views it as a denial of due process with some

Sixth Amendment implications.  The courts sometime look at the situation specifying counsel as

the issue (Sixth Amendment) or due process.

Not every restriction on counsel's time or opportunity to
investigate or to consult with his client or otherwise to prepare for
trial violates a defendant's Sixth Amendment right to counsel.  See
*Chambers v. Maroney*, 399 U.S. 42, 53-54, 90 S.Ct. 1975,
1982-1983, 26 L.Ed.2d 419 (1970).  Trial judges necessarily
require a great deal of latitude in scheduling trials.  Not the least of
their problems is that of assembling the witnesses, lawyers, and
jurors at the same place at the same time, and this burden counsels
against continuances except for compelling reasons.  Consequently,
broad discretion must be granted trial courts on matters of
continuances; only an unreasoning and arbitrary "insistence upon
expeditiousness in the face of a justifiable  request for delay"
violates the right to the assistance of counsel.  Ungar v. Sarafite,
376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

18

1   Morris v. Slappy, 461 U.S. 1, 11-12, 103 S. Ct. 1610, 1616 (1983)(state court denial of

2   continuance for originally assigned public defender to become available not a Sixth Amendment

3   violation).

> There are no mechanical tests for deciding when a denial of a
> continuance is so arbitrary as to violate due process.  The answer
> must be found in the circumstances present in every case,
> particularly in the reasons presented to the trial judge at the time
> the request is denied.  Nilva v. United States, 352 U.S. 385, 77
> S.Ct. 431, 1 L.Ed.2d 415; Torres v. United States, 270 F.2d 252
> (C.A.9th Cir.); cf. United States v. Arlen, 252 F.2d 491 (C.A.2d
> Cir.).

9   Ungar v. Sarafite, 376 U.S. 575, 589-90, 84 S. Ct. 841, 849-50 (1964) (finding denial of

10  continuance for newly retained counsel to familiarize himself with case not unconstitutional in

11  light of all the circumstances, including that the motion was made on the day of the scheduled

12  hearing, Ungar himself was a lawyer familiar with court's practice regarding not granting

13  adjournments, evidence and witnesses were readily available; nor, when counsel was permitted to

14  withdraw, did the Constitution require the trial court to grant Ungar's own motion for

15  continuance).  On the other hand, while "[t]he matter of continuance is traditionally within the

16  discretion of the trial judge, and ... not every denial of a request for more time ... violates due

17  process ...., a myopic insistence upon expeditiousness in the face of a justifiable request for delay

18  can render the right to defend with counsel an empty formality.  Chandler v. Fretag, 348 U.S. 3,

19  75 S.Ct. 1, 99 L.Ed. 4."  Ungar, at 589, 84 S. Ct. at 849-50.

20          For petitioner to show a violation of his Sixth Amendment rights based

21  on the trial court's denial of his motion to continue, petitioner must therefore demonstrate "that

22  the trial court abused its discretion through an 'unreasoning and arbitrary "insistence upon

23  expeditiousness in the face of a justifiable request for delay.""" Houston v. Schomig, 533 F.3d

24  1076, 1079 (9th Cir. 2008).   Generally, the Ninth Circuit has held that absent "a showing of

25  actual prejudice" to petitioner's defense as a result of a "trial court's refusal to grant a

26  continuance, it cannot be said that the district court erred by denying relief on this ground."

1   Gallego v. McDaniel, 124 F.3d 1065, 1072 (9th Cir. 1997).  See also United States v. Mendoza-

2   Salgado, 964 F.2d 993, 1016 (10th Cir. 1992).  Mendoza-Salgado relied on United States v.

3   Cronic, 466 U.S. 648, 662 n. 31, 104 S.Ct. 2039, 2048 n. 31 (1984) :"Absent a showing the

4   district court unreasonably or arbitrarily interfered with defendant's right to counsel of choice,

5   we believe reversal is appropriate only when defendant identifies specific prejudice resulting

6   from denial of preferred counsel, and when such prejudice renders the trial fundamentally unfair.

7   See Cronic, 466 U.S. at 662 n. 31, 104 S.Ct. at 2048 n. 31. Mr. Garcia claims no prejudice, nor

8   do we see grounds for such a claim in the record."

9          Mendoza-Salgado, although a case from outside the Ninth Circuit, is very

10  instructive to the situation here, again assuming that indigent defendants with appointed counsel,

11  have equal rights to the counsel of their choice as do defendants with retained counsel.  But see

12  id., 964 F.2d at 1014 n.12.  A defendant in Mendoza-Salgado by the name of Garcia had retained

13  counsel who entered a hospital for an unexpected medical problem 21 days before the set trial

14  date.   Ultimately, the request for a continuance was denied, and defendant had to proceed to trial

15  with associates of his retained counsel—a choice not accepted by defendant.   In sorting out this

16  problem, the court noted defendant's assertion, similar to the assertion made by petitioner herein,

17  "Mr Garcia asserts he need not claim ineffective assistance of counsel where the district court

18  denied him counsel of his choice."  Id. at 1016.  The Tenth Circuit disagreed: "Only when the

19  trial court *unreasonably or arbitrarily interferes* with a defendant's right to counsel of choice do

20  we agree a conviction cannot stand, 'irrespective of whether the defendant has been

21  prejudiced.'... Because the factors influencing a particular case often vary, the district court

22  enjoys broad discretion on matters of continuances, even when the parties implicate Sixth

23  Amendment issues." Id. (Emphasis in original).   In Mendoza-Salgado, the court determined that

24  Garcia had not shown an arbitrary interference with one's right to [retained] choice of counsel,

25  and hence the lack of prejudice doomed the issue.

26  ////

1    The undersigned sees more clearly, now, petitioner's position of "no prejudice

2  necessary" as expressed at oral argument.[7]  But the argument conflates an arbitrary interference

3  with a mere error in not granting the continuance.  In order for petitioner to prevail on the

4  assumptions thus far, the undersigned will make one more assumption in favor of petitioner—

5  that any ultimate error in not granting a "continuance" because of counsel's scheduling conflicts

6  for a trial date,  is the same thing as "arbitrary interference." This assumption must be made

7  because petitioner does not even attempt to demonstrate prejudice beyond the wildly speculative

8  assertion that because Clinkenbeard was a "better" attorney, and because he might have actually

9  performed more investigation than the attorney appointed to represent petitioner at trial,

10  petitioner may well have fared better at his trial.

11    The factors applied by the Ninth Circuit on direct appeal to determine whether the

12  district court has abused its discretion in granting or denying a request to continue a hearing,

13  particularly "[w]hen defendant's Sixth Amendment right to counsel is implicated," include:

14          whether the continuance would inconvenience witnesses, the court,
            counsel, or the parties; whether other continuances have been
15          granted; whether legitimate reasons exist for the delay; whether the
            delay is the defendant's fault; and whether a denial would
16          prejudice the defendant.

17  United States v. Studley, 783 F.2d 934, 939 (9th Cir. 1986) (no abuse of discretion where

18  defendant on day of trial, three months after arrest, was denied continuance to, inter alia, obtain

19  counsel when the court found: the request not made in good faith, that Studley had been granted

20  prior continuances, had known of need for counsel for several months,[8] the facts of the case were

21

22          [7] In a case, unlike the one here in that continuances were not at issue, where a defendant
    who can afford his own counsel is erroneously deprived of his choice no additional prejudice
23  need be shown to constitute a Sixth Amendment violation.  United States v. Gonzalez-Lopez,
    548 U.S. 140, 146-148, 126 S. Ct. 2557 (2006).
24
          [8] First, defendant Studley had asked in two court appearances to have someone represent
25  her who was not a licensed attorney; she was told she could represent herself but representation
    in court by another required a licensed lawyer; the Federal Public Defender had determined that
26  she did not qualify for appointed counsel.  United States v. Studley, 783 F.2d at 938-39.

not complex and she would not obtain counsel even if continuance granted).  In the context of a

habeas petitioner's claim of a violation of his Sixth Amendment right to self-representation by a

state trial court's denial of his motion for a continuance in order to prepare his defense, a Ninth

Circuit panel identified four factors for consideration drawn from appellate courts:

> First, we look to the degree of diligence by the appellant prior to
> the date beyond which a continuance is sought. [Citation omitted.]
> Second, we consider whether the continuance would have served a
> useful purpose if granted. [] Third, we weigh the inconvenience
> that granting the continuance would have caused the court or the
> government. [] Fourth, we look to the amount of prejudice suffered
> by the appellant. [] These factors must be considered together, and
> the weight given to any one may vary from case to case. [] At a
> minimum, however, in order to succeed the appellant must show
> some prejudice resulting from the court's denial.[]

Arnant v. Marquez, 772 F.2d 552, 556-57 (9th Cir. 1985),[9] citing United States v. Flynt, 756 F.2d

1352, 1359-61 (9th Cir. 1985).[10]

   The essence of petitioner's claim (utilizing all assumptions) is that he was denied

his Sixth and Fourteenth Amendment rights by the trial judge by an arbitrary insistence on

expeditiousness in the face of a justifiable request for delay until February or March of 2000 by

Mr. Clinkenbeard.  Petition, pp. 17-27; Traverse, p. 6.  The arbitrariness, petitioner asserts, is

evidenced by the fact that the only reason the judge gave for removing Mr. Clinkenbeard, which

arose from the prosecutor's concern that Mr. Cummins might not be available to testify at the

time of the requested date for trial, was a concern which the record contradicted.  Petition, pp. 10,

24-25, citing RTA[11] 58; Traverse, p. 7.  For good measure, petitioner, also cites Ohio v. Roberts,

448 U.S. 56, 73, 100 S. Ct. 2531 (1980), for the proposition that preliminary hearing testimony

may be admitted at a criminal trial should a witness have become unavailable and in light of

---

[9] Cert. denied, 475 U.S. 1099 (1986).

[10] Amended on other grounds, 764 F.2d 675 (9th Cir. 1985).

[11] Augmented Reporter's Transcript on Appeal.

1   sufficient indicia of its reliability.[12]  Traverse, p. 7 n. 3.   However, the court's review of the

2   record indicates that the trial judge was at least equally concerned with Mr. Clinkenbeard's dense

3   work schedule and how that would preclude, in her opinion, his ability, especially in light of the

4   investigations he indicated he intended to undertake, to be ready for trial in a reasonable time.

5   RTA 57, 59.

6           As to the prosecutor's apparent concern about Cummins' potential unavailability

7   at trial if it was delayed, petitioner argues that Mr. Clinkenbeard had observed that in the

8   People's own motion for a speedy trial, it was asserted that Cummins had "been completely

9   cooperative and reliable" since the case filing, that he "testified forthrightly and soberly at the

10  preliminary hearing in this case," and that the People had "confidence that he will continue to

11  cooperate and be available to testify at the trial in this case."  Petition, p. 7, RTA 37, citing CT

12  111.   Mr. Clinkenbeard also stated that his office had spoken with him and that he had been

13  living in Sacramento for about nine years and did not intend to go elsewhere:

14          There is no realistic fear or threat of Mr. Cummings [sic]
            disappearing or not being able to testify.  Everything that Mr.
15          Cummings has said is supported by Mr. Frawley's motion that he
            will be available to testify the same as a police officer witness or
16          any other percipient witness. [¶] I mean there has been no
            indication that there is a risk of losing Mr. Cummings prior to trial.
17          In addition, his testimony has been preserved at the preliminary
            hearing.

18

19  Petition, p. 8, RTA 37.

20          The prosecution's motion, however, nevertheless also referenced Cummins' lack

21  of a permanent residence and his status as a "self-admitted drug addict."  CT 111.

22          Petitioner emphasizes that after the May 21, 1999 preliminary hearing, following

23  appointment of the public defender's office, when Mr. Clinkenbeard sought a trial date in the

24  _____

25      [12] Roberts was abrogated by Crawford v. Washington, 541 U.S. 36, 68-69, 124 S. Ct.
    1354, 1374 (2004), to the extent that where testimonial statements are at issue, there can be any
    other "indicium of reliability sufficient to satisfy" the Sixth Amendment's demands but
26  confrontation, i.e., cross-examination.

1    spring and the prosecution objected, that it was only at the hearing on May 25, 1999, that the

2    prosecution filed an amended information adding special circumstances allegations claiming the

3    crimes were committed during an attempted robbery, which subjected petitioner to the possibility

4    of a life without parole term.  Petition, p. 4, CT 17, RTA 1.  Prior to that Mr. Clinkenbeard on

5    May 25, 1999, had filed a declaration stating that he was representing defendants in multiple-

6    defendant homicide cases and had not yet completed, and did not expect to complete, his

7    investigation "for some time," asking for a trial date in the spring of 2000.  Petition, p. 4, CT 19.

8    At the June 8, 1999, trial date setting hearing, Mr. Clinkenbeard indicated that the special

9    circumstance allegations changed the nature of the case and would require even more time to

10   investigate and consult experts.  Petition, p. 4, CT 4, RTA 4-5.  In a June 23, 1999, response to

11   the prosecution's speedy trial motion, Clinkenbeard pointed out circumstances in an effort to

12   show the case was not simple and straightforward as the prosecution asserted, including

13   questions about the voluntariness of petitioner's custodial statements; inconsistent statements by

14   Cummins, one of the victims; a cross-racial identification issue; witnesses who could challenge

15   or enhance the credibility of petitioner and Cummins; a cluttered crime scene; position of

16   Owens' body; the locations of Cummins and the spent ammunition; blood spatter pattern;

17   dilapidated condition of gun.  Petition, p. 5, CT 124-25.   Petitioner states that Mr. Clinkenbeard

18   told the trial court that he had essentially been sandbagged by the prosecutor's waiting for four

19   months until after the preliminary hearing to amend to assert a felony murder theory, that the

20   prosecutor, whose office had no clear policy, was acting in bad faith by making selective use of

21   Cal. Penal Code § 987.05 to get the public defender's office off certain cases with its greater

22   resources than a panel attorney would have, that petitioner and his family wanted him

23   (Clinkenbeard) on the case.  Petition, pp. 6-7, RTA  29-30, 35.  Petitioner also recounts from the

24   state appellate court opinion above, Mr. Clinkenbeard's representation to the judge in camera as

25   to the detailed investigation he intended to conduct.  Petition, pp. 8-9.  In denying the

26   continuance, relieving the public defender's office from representation of petitioner and just prior

24

to appointing a panel attorney, the trial judge stated:

> My analyses is this: Technically the Public Defender's Office was appointed following the Court's holding Mr. Jones to answer at the time of preliminary hearing.
>
> And as a standard, the public defender thereafter was immediately appointed, and you accepted the appointment, Mr. Clinkenbeard. Following that, almost immediately following that, was a colloquy between the Court and counsel regarding the concern of setting a trial date.
>
> At that point, you indicated that you were not in a position to try the case within the 60 days, to which Judge Tochterman made reference. Thereafter, Mr. Frawley indicated he was not stipulating to any delay and did indicate his concern about the trial proceeding a [sic] timely fashion.
>
> A specific time frame is mentioned at that point, and there is specific discussion regarding 1050 and 987.50 at that point. I feel that essentially that discussion and the proceedings took place while the public defender was appointed in the case and clearly was representing Mr. Jones, that that appointment was impliedly continued on a representation that was consistent with 987.05. And it is quite clear based on the declaration that's been filed since that time and the information that's been presented in subsequent arguments that you cannot be prepared with what the Court considers a reasonable time frame.
>
> And you are, in fact, as stated in your declaration -- not to take away from you at all, Mr. Clinkenbeard -- but that you are, in fact, a very busy man with a trial schedule which included a trial at the time you received this assignment, a two-defendant trial scheduled in June, a three-defendant trial in August, thereafter a trial scheduled in November, and a four-defendant case that at that point was over a year old and apparently had yet to be set.
>
> In my view, quite honestly, you're too busy to try the case within a reasonable period of time. I understand the discussions we have had regarding the culture in this community. I understand that there are other cases that certainly take longer to get to trial than this. I've read the preliminary hearing transcript. I have considered what I consider to be the nature of this case.
>
> Your areas of investigation that you raised confidentially before the Court and the time frame that would need to be taken to diligently pursue the investigation, and I don't think it would take that long or should take that long. The factual and legal issues presented in this case, while they certainly may warrant the investigation that you have outlined in a very diligent approach for preparation for trial are not complex by any stretch in my view.

And the argument you had about the surprise robbery theory, I can't understand how or why that would be a surprise. It seems rather to jump out at one when you review this case.

The People have asserted their statutory and constitutional rights to a speedy trial. Clearly both sides have one. Your client is willing to waive it. The People are not. We have certain uncertainties, and the problems and potential prejudice and the undue delay in this case.

I don't believe that a homeless person is as reliable or predictable a witness as someone that you refer to as a police officer. There are uncertainties in all of our lives. But more certainly in the lives of someone who is homeless, who changes locations, who is not tied to a particular place and much more vulnerable to the community. Their health and conditions varies over a period of time.

None of us can predict what will happen over the next year, but I don't find Mr. Frawley's condition in wanting to try to have Mr. Cummings [sic] available and healthy at the time of trial to be unreasonable. And his concerns, I think, were somewhat justified under the circumstances. It is a key witness, an eyewitness to the shooting.

All right. At this point, therefore, for these reasons, the Court is finding that Mr. Clinkenbeard is unable to represent that he can try the case within a reasonable period of time, and that the basis -- the primary basis in the Court's view for that inability is that [sic] a quite full trial schedule, and that is not a justification for delay under 987.05.

Countered with the interests of the People and the Prosecution of the case which would have a greater chance of securing the presence of their necessary witness, I'm going to order the Public Defender's Office be relieved, that there is no attorney in that office that's in a position to take that case.

That would have been my other option had there been someone available to do so. Mr. Clinkenbeard, you simply stated that is not feasible.

RTA 56-59.

The Ninth Circuit weighs the degree of diligence by the appellant before the continuance was sought; whether the continuance, if granted, would have served a useful purpose; the inconvenience to the court or the government in granting the continuance; the amount of prejudice suffered by the appellant, with appellant, at a minimum showing some

26

prejudice from the court's denial.  Arnant v. Marquez, 772 F.2d at 556-57 (9th Cir. 1985).  In this case, petitioner's counsel request, made some four months after he was "assigned" to defend petitioner and promptly after the preliminary hearing before a trial date had been set does not show a lack of diligence.  The trial court was not moved by petitioner's counsel's representation that the amended special circumstance charge could have set counsel back in light of the case factors.[13]  The trial judge did not appear to have been persuaded that even the requested continuance could have been sufficient with Mr. Clinkenbeard's inarguably heavy caseload to which he was already committed in combination with the litany of investigative tasks in the instant case he anticipated would need to be completed and he also represented that other attorneys in the public defender's office could not have gone to trial earlier.  The inconvenience to both the trial court and the prosecution of delaying trial on what both perceived to be, despite petitioner's counsel's representation, a case lacking in complexity is arguably palpable.  Nor does petitioner make a showing of prejudice, although in the original pro se petition, petitioner attempts to contrast what his counsel did at trial with what he states Mr. Clinkenbeard intended to do (i.e., that his counsel at trial did not move to exclude petitioner's statement to police, used only one expert witness (instead of four), did not raise the specter of third-party culpability, and failed to object to an allegedly improper statement in the prosecution's closing argument in rebuttal).  Pro se Petition, pp. 30-31.

This court finds that petitioner has raised legitimate arguments, as did Mr. Clinkenbeard before the trial court, supporting the granting of a trial date continuance in this matter.  However, what petitioner has not shown is any unreasonable error given the "wide discretion" a trial judge has in setting a case for trial.  Morris v. Slappy, 461 U.S. at 11-12, 103 S. Ct. at 1616 (citations omitted), which as previously stated, grants broad discretion to trial courts in deciding whether to grant or deny continuances and prohibits "only an unreasoning and

_____

[13]  The special circumstances essentially added only a new theory, not new facts to those which were already known.

arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay....'"  In other words, while it cannot be said that petitioner's counsel's request for a continuance was unjustifiable, neither is there an adequate showing that the denial was based only on an arbitrary and unreasoning insistence upon expediting the trial.  Petitioner has certainly not shown any prejudice to the extent prejudice is required.

*Conclusion*

The petition should be denied, first because no federal issue has been set forth as found by the state Court of Appeal, second and in the alternative, because petitioner, as an indigent defendant, had no right to counsel of choice, and third, in the alternative, because even assuming he did, there was no error in refusing the Clinkenbeard request for "continuance."

Accordingly, IT IS HEREBY RECOMMENDED that the petition be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 30, 2011

/s/ Gregory G. Hollows
_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
jones1421.amfr

28